## Postlethwait *versus* Frease *et al.*

Every parol contract for the sale of lands is within the statute of frauds, unless there has been such part performance as cannot be compensated in damages.

ERROR to the Common Pleas of *Jefferson county.*

This was an ejectment by David Postlethwait against Henry Frease and others, for a tract of 100 acres of land in Potter township.

The plaintiff had the legal title to the land in controversy; the defendants claimed under Jacob Young, to whom, it was alleged, the plaintiff had contracted, by parol, to sell the premises.

The nature of the evidence on which the defendants relied as proof of an executed parol contract, is sufficiently set forth in the opinion of the court. The court below held the same to be sufficient to take the case out of the Statute of Frauds, and so instructed the jury: to this the plaintiff excepted; and a verdict having been rendered in his favour, to be released upon payment of $550 with interest, and judgment having been entered thereon, he removed the cause to this court, and here assigned the charge of the court below for error.

*White & Coffey,* for the plaintiff in error, cited Brawdy *v.* Brawdy, 7 *Barr* 159; Poorman *v.* Kilgore, 2 *Casey* 371; Blakeslee *v.* Blakeslee, 10 *Harris* 243; Moore *v.* Small, 7 *Id.* 461; Bash *v.* Bash, 9 *Barr* 260; Rankin *v.* Simpson, 7 *Harris* 471; McCue *v.* Johnston, 1 *Casey* 306; Wilson *v.* Clarke, 1 *W. & S.* 554.

*B. F. Lucas,* for the defendants in error, cited 14 *S. & R.* 354; Reed *v.* Reed, 2 *Jones* 117; Lowry *v.* Mehaffy, 10 *Watts* 387.

The opinion of the court was delivered by

WOODWARD, J.—The contract, under which the defendants claimed, successfully, the plaintiff's title to the land in question, was not proved by any witness who heard the parties make it, or speak of it in the presence of each other, but was made out by proof of the confessions, or *ex parte* declarations, of the plaintiff. These confessions imported, that he had sold Jacob Young 100 acres of his land, for $800 in eight annual payments, and that he was to receive cattle in payment, and that the first payment had been made. As is usual in such cases, the confessions as proved are irreconcilable with the evidence of direct dealing between the parties, especially so much of it as is in writing. For instance, some of the witnesses prove the lot of cattle valued at $70 to have

[Postlethwait *v.* Frease *et al.*]

been paid on the land, whilst the book account of the plaintiff, attested by Young's signature to a written settlement, show them to have been credited on a general account, on which a considerable balance still stood against Young. So with the two horses at $140; the parol evidence makes them a payment on the land, whilst the written proves that the plaintiff bought them for his promissory note.

But when titles to land are to be made out in this manner, we are taught by experience to expect such discrepancies, and even worse, in the proofs. Wherever the declarations of a party having a sale in contemplation are set up as evidence that he has made the sale, they will not of course bear the tests which written transactions afford; because talking loosely, as many men do, about what they have bought and sold, but conducting their business on paper carefully, the proofs are not akin and do not assort well. If the talker had understood that he was making title to land, he would have spoken more precisely—with something of the same care with which he settles accounts and executes papers. The proofs would then be, when brought together, less inharmonious.

To employ language as evidence of land title, which the speaker did not mean should be so used, is indeed a sort of fraud on him which the statute was made to exclude. The statute is founded on the philosophy of human life. It assumes that men will talk about houses and lands—that they will project exchanges, divisions, and distributions, with their neighbours, their children, and their tenants. But, that these speculative and theoretical conversations may not be mistaken for the thing contemplated, it prescribes an easy and uniform rule by which the thing thought of and talked about shall be done—to wit, a writing. It is a rule that is worthy of so grave a transaction as the sale of land—one that accords well with the usages of modern society, and which leaves men free to talk without loss of their estates.

In the earlier ages of the race, when language was only spoken—before literal language was revealed to man—transfers of land were necessarily by parol; but they were most solemn and precise transactions, in the presence of numerous witnesses, and with external signs that were calculated to impress their imaginations and memories: See *Gen.* chap. 23. Now-a-days, however, when literal language has become familiar to almost every man who deals in lands, and when by common consent and statutory injunction it is made the repository of titles, it seems strange that mere verbal language, spoken casually to parties having no interest to understand or remember it aright, should be treated as evidence, not of some thought or half-formed purpose to convey a title, but as evidence that the speaker had in fact sold, and bound himself to convey the title.

[Postlethwait *v.* Frease *et al.*]

The judicial notion that more equity is done by mitigating than by enforcing the statute, is not sanctioned by experience and observation; and, as real estate continues to enhance in value in Pennsylvania, it is most likely we shall be forced back more and more upon the rule of the statute. Without, however, taking any retrograde step in this case—giving to the defendants the full benefit of those adjudications which have treated such confessions as we have here as evidence of title—and granting moreover that their ancestor was not disqualified by reason of his tenancy under the plaintiff from becoming a purchaser by parol, but that he did so purchase, and take possession in pursuance of his purchase—in a word, conceding to the defendants all the ground that was contested on the trial, it is still apparent, that the judgment ought to have been against them. For if there is anything settled in Pennsylvania, it is that a parol contract, however full the proof of it, is not to be executed, unless it would be unjust to rescind it. Some pains were taken in Moore *v.* Small, 7 *Harris* 467, to show that this rule rested on legislative as well as judicial sanction, and it was there stated thus :—*Every parol contract is within the statute of frauds and perjuries, except where there has been such part performance as cannot be compensated in damages.*

If the circumstances of the case are not such as to render reasonable compensation for what has been paid and done impossible, then compensation instead of execution of the contract is the duty which the law will enforce. And there are such cases. Syler *v.* Eckhart, 1 *Binn.* 378, as re-stated by Judge Kennedy in Eckert *v.* Eckert, 3 *Penn. R.* 362, is an instance; for there the land was almost or quite valueless, except as the son's labour had improved it and made it a home for himself and family. The part performance there, constituted, essentially, the whole interest in question. It was rather his own labour than his father's land which was adjudged to him.

And a purchaser may make improvements and family arrangements which do not admit of assessment or compensation; or the insolvency of the vendor may render it impossible that compensation, if assessed, should be paid. In these, and in other cases that are imaginable, the parol contract could not be rescinded without injustice to the purchaser.

It is to be executed, when justice can be done in no other manner. But this is not such a case. This is a recent possession, not older than the fall of 1850 or the spring of 1851, with inconsiderable improvements made. And what improvements were made are clearly defined in the evidence both as to extent and value. The number of acres cleared and fenced—the cost of such work— the value of the house, the barn, and the well, are all stated by several witnesses, among whom there is very little discrepancy. Indeed, it may be said with strict truth, that the extent and value

[Postlethwait *v.* Frease *et al.*]

of the improvements are more distinctly and clearly proved than the contract of sale, the time of taking possession under it, or the amount of purchase-money paid.

Here then we have, in a case where specific execution of a parol contract is demanded, the ground laid out and defined for compensation. It is more easy to say what Young's heirs should receive, to compensate them for the outlay which their father made on the faith of this parol contract, than it is to ascertain how much purchase-money they ought to pay. And yet this must be ascertained, if execution is to be decreed, for there must be execution of both parts of the contract, if of either.

But supposing it possible to make execution, what right, it may be asked, have we to execute a parol contract for the sale of land which we are shown can be rescinded without injustice to either party? None, unless the statute of frauds and perjuries be a fable.

This, then, is a case for compensation and not for execution. The plaintiff's action upon his legal title is virtually a rescission of the parol contract. The defendants set up a contract of sale and purchase which they ask may be enforced. The statute bars them. Compensation results as a legal consequence. Whether it may be enforced in this action, by means of a conditional verdict, or whether the defendants must first turn out and then sue, and what is the proper *measure* of compensation, whether awarded in this suit or a subsequent one, are questions for counsel to consider.

The judgment is reversed, and a *venire facias de novo* awarded.