## McMahon's Estate.

*Partition—Denial of tenants in common—Confirmation of proceedings.*

The denial of the tenancy in.common by an heir of the decedent on the return of the writ of partition, with an assertion of title in himself by adverse possession, will not be sufficient to require a suspension of the proceedings, but the court may hear evidence upon the claim asserted and if it be insufficient to justify submission to a jury, may confirm the inquest and proceed with the partition.

Where in proceedings in the orphans' court to partition the real estate of a father, one of the daughters claims a portion of the land through the will of her mother, who died after the father, but it appears that the mother, under the father's will, had only a life interest in the land which she had devised to her daughter, and that as to other land which she may have held in fee, she died intestate, the court may determine that the claim set up by the daughter was insufficient, and proceed with the partition.

Argued March 13, 1905.   Appeal, No. 198, Jan. T., 1904, by Susan McMahon, from decree of O. C. Clinton Co., in partition proceedings in Estate of Patrick McMahon.   Before DEAN, FELL, MESTREZAT, POTTER and ELKIN, JJ.   Affirmed.

Petition for partition.

MAYER, P. J., filed the following opinion:

Bridget Swartzfisher, the daughter of Patrick McMahon, who died in 1884, filed her petition for partition of three properties, to wit:

No. 1.   Lot 4 in block 6, on south side of Erie avenue, having a two-storied frame building for business purposes, and a two-storied frame dwelling house and outbuildings thereon.

No. 2.   Two adjoining lots on south side of Erie avenue, Nos. 9 and 10 in block 12.   These had a two-storied frame dwelling house and other buildings thereon.

No. 3.   Lot No. 6 in block No. 3, having a hotel erected thereon and known as the hotel property.

Upon this petition on August 2, 1902, an order was made by the court as follows:

" Now, August 2, 1902, upon the presentation of the above stated and foregoing petition and due consideration thereof, the court awards an inquest as prayed for; returnable at next term, September 22, 1902.

" Notice of this proceeding and of the time and place of the meeting of said inquest to be given twenty days previously thereto, personally, or by writing left at their respective places of abode, to all parties in interest residing within Clinton county, and to all persons resident without said Clinton county notices shall be given personally, or by writing left at their respective places of abode as aforesaid, if such notice be found reasonably practicable, and if not found reasonably practicable, such notice shall be given to all persons interested and residing without the county of Clinton by publication for three weeks in the Clinton Democrat, a newspaper published weekly in Lock Haven, Clinton county, Pennsylvania, and mailing copies of said publication to such nonresident parties addressed to their last known places of abode, if any such abodes be known."

Susan McMahon, a daughter of Patrick and Mary McMahon, excepts to the confirmation of the return of the sheriff to the writ of partition in the above stated case and moves the court to quash the said writ for the following reasons :

" 1. The petitioner has included in her said petition, and in the writ of partition, the following lots of land, situate in the borough of Renovo, county of Clinton, Pennsylvania, viz :

" (a) Lot No. 4 in block 6, in the general plan of the said borough of Renovo, particularly designated and described in the said petition and writ, as piece No. 1, in which, at the date of the death of Patrick McMahon, he held an estate in fee simple, and the absolute property.

" (b) Lots Nos. 9 and 10 in block 12, in the general plan of the said borough of Renovo, particularly designated and described in the said petition and writ as piece No. 2, in which Michael J. McMahon, at the time of his death, was seized of an estate in fee simple or absolute property.

" (c) Lot No. 6 in block 3, in the general plan of the said borough of Renovo, particularly designated and described in the said petition and writ, as piece No. 3, in which Mary McMahon, at the date of her death, was seized of an estate in fee simple or absolute property."

" The act of assembly under which proceedings in partition are instituted in the orphans' court of Clinton county, contemplates the division in one proceeding of a single estate, and the court is not empowered to join more than one."

On November 14, 1902, additional exceptions were filed by the said Susan McMahon as follows :

" There being no personal property of Patrick McMahon, deceased, out of which the legacies contained in his will shall be paid, and it appearing from the language of his will that it was his order to realize the money to pay the same, the terms of the will worked a conversion of the property, and partition will not lie.

" The legacy in the will of said Patrick McMahon, deceased, as appears by the will, amounting to over one thousand ($1,000.00) dollars on lot or piece No. 1, and the mortgage on lot or piece No. 2, as described in the petition, being one thousand ($1,000.00) dollars, the cheapest and most convenient and the proper legal method to dispose of the same is by proceedings in the orphans' court to make sale of the property, and not by proceedings in partition.

" Petitioner does not aver distinctly that there are no parties interested in the lands save those that are named in the petition."

On November 11, 1902, Bridget Swartzfisher filed an answer to the petition of Susan McMahon to quash the writ of partition and denying the allegations contained therein.

The Philadelphia and Erie Land Company laid out, in the borough of Renovo, a number of lots. These lots were designated in blocks numbering from one, and so on, consecutively, in which blocks lots were numbered from one, and so on, consecutively.

On January 3, 1868, the Philadelphia and Erie Land Company made and executed a deed to Patrick McMahon for lot No. 4 in block 6, which was recorded in the office for recording deeds in Clinton county on November 17, 1869. Upon this lot Patrick McMahon erected a dwelling house and lived thereon with his family until his death in 1884.

On October 3, 1877, the Philadelphia and Erie Land Company made and executed to Patrick McMahon and Mary McMahon, his wife, a deed for lot No. 3 in block 6, which deed was recorded on July 10, 1882, in deed book No. 34.

On June 3, 1884, Patrick McMahon made his last will and testament, which was duly probated June 8, 1886, and recorded July 12, 1886, in will book " B " page 530.

Patrick McMahon went into possession of lot No. 6 in block 3, but it does not appear that he went into possession of lot No. 3 in block 6, although his deed for the same was recorded. Upon lot No 6 in block 3 he erected a hotel and it is known in this proceeding as the hotel property.

Patrick McMahon in his last will and testament gave and bequeathed absolutely to his son, Michael McMahon, the house and lot which was occupied and used for hotel purposes. All the balance and residue of his property, real, personal and mixed, he gave, devised and bequeathed to his wife, Mary McMahon, she to have entire control of it as long as she lived and at her death he directed it to be divided as follows : " To my oldest daughter Bridget, wife of Joseph Swartzfisher, or her survivors, I will and bequeath fifty dollars ; to my daughters Maria, Susan and Nancy McMahon, I will and bequeath to each four hundred dollars," and the balance, after the above amounts were paid to his daughters, he willed and bequeathed to his son, Michael McMahon.

Michael McMahon died intestate in 1891, and Mary McMahon, the widow, died in 1901, having previously made a will dated November, 5, 1898, which was duly probated on January 13, 1902. By her last will and testament Mary McMahon made the following devise and bequest to her daughter Susan : " I give, devise and bequeath to my daughter Susan, all that lot or parcel of land situated in the borough of Renovo, in said county, bounded and described as follows, viz. : Northwardly by Erie avenue ; eastwardly by lot No. 4 ; southwardly by St. Clair avenue. Having a front on Erie avenue of twenty-five feet, and extending in depth one hundred and thirty feet. And known and ' designated ' on the general ' plan ' of said borough as lot No. 4 in block 6. To be her property absolutely and ' forever.' Provided, however, and I do hereby direct that the said Susan shall furnish a home and maintenance to and for her sister ' Misia ' so long as she be willing to live with her, and in case they shall not agree, or my said daughter Maria shall live elsewhere ' then ' with her sister Susan, that she, the ' said ' Susan, shall pay for and toward the maintenance of my daughter Maria not exceeding ten dollars per month. This provision to continue so long as my said daughter Maria shall live."

2. It is entirely clear that Mary McMahon, by her last will and testament, did not devise to her daughter, Susan McMahon, any real estate to which she had title. The property devised to her by the last will and testament of her husband, Patrick McMahon, was lot 4 in block 6, on which was erected a dwelling house, but in this she had only a life estate and she had no authority to make a devise of this property so as to vest any title in Susan McMahon.

3. Even if Mary McMahon did own the hotel property, she died intestate as to that, as it is not mentioned or referred to in her will, and having died so intestate, the property would vest in Bridget Swartzfisher, Susan McMahon and Nancy McMahon in equal shares and proportions. Susan McMahon, therefore, did not have such an adverse interest in the real estate proposed to be divided as would prevent the court from acquiring jurisdiction and awarding an inquest of partition. An action of ejectment is, therefore, unnecessary to determine the title of Susan McMahon in the hotel property, and there is no reason why partition should not be proceeded with.

That the orphans' court is right in this proceeding to hear evidence upon the claim asserted by Susan McMahon, and, if it is shown to be insufficient, to decline submitting it to a jury in an action of ejectment, is fully sustained by the decisions in the case of the Appeal of Welch, 126 Pa. 297, in which it was held that " the denial of the tenancy in common by an heir of the decedent on the return of the writ of partition, with an assertion of title in himself by adverse possession, will not be sufficient to require a suspension of the proceedings, but the court may hear evidence upon the claim asserted and if it be insufficient to justify submission to a jury, may confirm the inquest and proceed with the partition."

The other exceptions to the proceedings in partition were not pressed on the argument.

All the exceptions to the confirmation of the proceedings in partition are dismissed and the inquest of partition confirmed.

*C. S. McCormick*, for appellant.—Partition is made of lands of tenants in common when their possession is common; ejectment is the remedy when the possession of one is adverse to the others: Bigley v. Jones, 114 Pa. 510; Eell's Est., 6 Pa.

467; Law v. Patterson, 1 W. & S. 184; McMasters v. Carothers, 1 Pa. 324.

To maintain partition proceedings, the heirs must be in the actual possession of the premises: McMasters v. Carothers, 1 Pa. 324: Wall's Estate, 24 Pa. C. C. Rep. 560.

*T. C. Hipple*, for appellee.—A mere naked claim to hold real estate exclusive of a petitioner in partition is not sufficient to stay or prevent partition, especially when the testimony taken together shows no legal or equitable title adversely held: Welch's App., 126 Pa. 297.

PER CURIAM, March 20, 1905:

This decree is affirmed on the very clear and satisfactory opinion of the learned judge of the orphans' court.

Decree affirmed.

---

## Shower's Estate.

211    297
e224   ²200

*Trust and trustees—Active trust—Will.*

Testator gave the income from the residue of his estate to his wife, subject to certain charges. He then directed his executor to have a trustee appointed for one of his two sons and his two daughters. He provided further as follows: "After the death of my wife I direct all my estate then remaining to be divided equally between all my children share and share alike, the trustee or trustees appointed as before provided to receive in trust for my son and daughters before named the share to which they may be entitled respectively and to invest the same as he or they may deem most safe and profitable for my children above named in conformity, nevertheless, with the laws of Pennsylvania regulating and directing the investments and security of the moneys wherein infants or minors have an interest, and further direct the trustee or trustees so to control the shares of my three above-named children and the investments thereof that they, my sons and my daughters may enjoy the interest thereof only but in no way impair or diminish the principal." The other son died in testator's lifetime, leaving one child. Testator then made a codicil directing that the share which he had given absolutely to this son should be invested by the trustee of his other children, the income to be used for the nurture and education of the child, and in case the child should die unmarried and without issue, its share should be divided among testator's other children subject to the same trust provisions as were imposed on their other interests in his estate.