## Bentfield, Appellant, *v.* Hastenteufel et al.

*Equity—Injunction—Prayer to restrain ouster—Moot question.*

1. Where a bill in equity prays for an injunction to restrain proceedings to oust plaintiff from possession of real estate, and the proofs show that he had already vacated the premises, the question is moot, and will not be considered.

*Equity—Specific performance—Inadequate averments as to contract and terms.*

2. A bill in equity for specific performance of a contract to convey land claimed to have been bought for plaintiff, cannot be sustained, where the bill does not aver that defendant had acquired the property on plaintiff's account, or that the latter had in point of fact purchased the property from defendant, or that defendant had actually sold plaintiff the property, or that any tender of purchase price was made, or that plaintiff was ready and able to make such tender, but only avers that defendant acquired the property for an amount stated, that he agreed to "sell said farm to plaintiff for the said sum" (at some undesignated future time), and that plaintiff was to pay it in no certain way, or at no certain time, but only by such payments, to begin at some unnamed future time, as he might be able to make.

3. In such case, a claim by plaintiff that he had made valuable improvements while he occupied the land, is successfully met by proof that the value of such improvements was to be taken out of the rent, and was more than counterbalanced by plaintiff's long and free occupancy of the farm and substantial revenues derived therefrom.

Argued March 23, 1925. Appeal, No. 13, March T., 1925, by plaintiff, from decree of C. P. Lawrence Co., Sept. T., 1921, No. 1, dismissing bill in equity, in case of Charles Bentfield v. John Hastenteufel and Homer H. Swaney. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction and specific performance. Before EMERY, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*W. Walter Braham,* of *Aiken & Braham,* with him *Weingartner & Mercer,* for appellant, cited, as to specific performance: Parry v. Miller, 247 Pa. 45; Wood-

ward v. Tudor, 81½ Pa. 382, 394; Schuey v. Shaffer, 130 Pa. 16.

*Clyde Gibson,* of *Gibson & White,* with him *William S. Maxey,* for appellees, cited, as to specific performance: Hammer v. McEldowney, 46 Pa. 334; Zimmerman v. Rhoads, 226 Pa. 174; O'Connell v. Cease, 267 Pa. 288; Wistar's App., 80 Pa. 484.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 13, 1925:

During the year 1920, defendant Hastenteufel purchased a farm in Lawrence County for $6,500. Plaintiff Bentfield, a friend of defendant, went to live on the farm under a mutual arrangement, which at least amounted to a license from the owner to the occupant; differences arose between them and, in February, 1921, Hastenteufel, having agreed to sell the property to Swaney, the other defendant, notified plaintiff to vacate the premises; this not being done, Hastenteufel, in April, 1921, instituted proceedings before an alderman to recover possession of his farm, which proceedings ended in a judgment in favor of the landlord, whereupon Bentfield appealed to the court of common pleas, and also filed a bill in equity, the present proceedings, wherein he averred that, in December, 1919, Hastenteufel had entered into a parol contract with him in which the former agreed to acquire the premises in controversy and to "sell said farm to the plaintiff for the said sum of $6,500 [without stating when the sale was to take place], upon such annual payments as he, the said plaintiff, was able to make." The bill then avers that, on the faith of this arrangement, plaintiff had moved from another farm and disposed of a dairy business theretofore owned and conducted by him, in order to locate himself on the new farm, and had made valuable improvements to the latter; but, notwithstanding this, Hastenteufel had repudiated his contract, and it would cause

plaintiff "great loss, injury and damage should said de-
fendant dispossess and eject plaintiff as he has......
undertaken to do."

The bill further averred that Bentfield was entitled
to specific performance by Hastenteufel of his contract;
that plaintiff was threatened with vexatious suits, his
possession and occupancy of the premises would be in-
terfered with, and, finally, the damages to him would be
continuing and irreparable. Wherefore he prayed: (1)
"For an injunction......restraining defendant from
proceeding by said ouster and ejectment......, from in-
terfering with plaintiff's occupancy and possession of the
premises, and from instituting or proceeding with any
action at law for the purpose of interfering with plain-
tiff's possession and occupancy of the premises"; (2)
for "specific performance of the contract made by the
said Hastenteufel, defendant, with plaintiff, to sell and
convey to him the said farm and premises as stipulated
in said parol contract. and agreement"; (3) for ascer-
tainment, assessment and award of damages.

The answer of the real defendant, Hastenteufel, whom
we shall hereafter refer to as "defendant," was to the
effect that plaintiff entered into possession of the farm
under what he, defendant, calls a "demise," or "verbal
lease.....for an indeterminate time, without a specified
or determinate rental," it being understood that plain-
tiff was to pay the taxes (which both sides agree he
failed to do, except to a very minor extent) and de-
fendant was to have the right to live on the farm, receiv-
ing his board and lodging (which both sides agree he
neglected to do, except for an occasional day or so, and
one stay of about two weeks at the beginning of plain-
tiff's occupancy), all of this "to be considered as *part of*
the rental of said premises"; that, in 1921, defendant,
being desirous of ending this indeterminate and indefi-
nite relationship, notified plaintiff to vacate, and, at the
expiration of the notice, began the proceedings before the
alderman to gain possession. Finally, the answer avers

that "plaintiff has no contract or agreement......of which he is entitled to have specific performance," and that, "if plaintiff has any legal right in respect to the premises in question......, he has a full, complete and adequate remedy at law."

The judgment of the alderman was entered June 18, 1921; the present suit was commenced June 23, 1921; the bill was dismissed November 26, 1923, and an order dismissing exceptions to this decree was entered April 1, 1924. Finally, it appears that (with his wife, his parents, and three children) plaintiff was in possession of the farm from April, 1920, to sometime in 1923, and that he was not then forcibly dispossessed, but vacated the premises of his own accord; though plaintiff's counsel suggested at argument that, while his client had moved from the property, he would no doubt have been dispossessed in due course had he insisted upon remaining there. The fact remains, however, that he was not legally ousted and that he surrendered his possession.

The last-mentioned statement of fact makes it obvious that the first prayer of the bill, for an injunction to restrain plaintiff from carrying out the possessory proceedings before the alderman, or from otherwise interfering with plaintiff's occupancy of the premises, now presents a moot question which we are not called upon to determine.

When the first prayer is eliminated, it leaves for consideration only the prayer for specific performance; we say this, because, should plaintiff not be entitled to specific performance, any damages which he may be entitled to on account of improvements made to the premises in controversy or for breach of contract, if such is proved, can be recovered at law.

It is difficult to understand how there could be a decree for specific performance of the contract averred in plaintiff's bill. The bill does not aver that defendant had acquired the property on plaintiff's account; or that the latter had, in point of fact, purchased the property

from defendant; or that defendant had actually sold plaintiff the property; it avers only that, when defendant acquired the property, for $6,500, he agreed to "sell said farm to plaintiff [at some undesignated future time] for the said sum of $6,500," and that plaintiff was to pay for it in no certain way and at no certain time, but only by such payments, to begin at some unnamed future time, as he might be able to make.

With the thought that the very vague arrangement averred in the bill might be made more definite in the proofs, we have read all the testimony; but, if anything, it leaves the matter more indefinite than do the averments of the bill. This vagueness may perhaps be explained by the final statements of plaintiff, toward the end of his cross-examination, where he frankly says that it was the intention to have the arrangement between himself and defendant reduced to writing, which was never done; and that he construed the arrangement to give him, plaintiff, "the privilege to buy the farm at the purchase price he [defendant] paid for it, when he [plaintiff] got ready."

There is no averment in the bill that plaintiff ever "got ready" to buy or pay for the farm, or that he ever tendered a payment therefor; and the proofs contain many admissions on his part, and on the part of his wife, that, as a matter of fact, they did not at any time have the money to pay for the farm and never made tender of the consideration, or any part of it, to defendant. Moreover, when plaintiff's counsel was asked at argument before us whether his client desired then to make a tender of the purchase money, he failed to reply in the affirmative.

While it is detailed in the testimony that plaintiff spent upwards of $700 in making improvements, defendant claimed this was to be taken out in rent and was more than counterbalanced by plaintiff's comparatively long and free occupancy of the farm, and the substantial revenues he derived therefrom.

This case is readily distinguishable from Piatt v. Seif, 207 Pa. 614, principally relied on by appellant. There Christopher L. Magee purchased the real estate in controversy for Piatt and the latter immediately paid a small part of the consideration money, taking sole and exclusive possession of the premises. In the present case, defendant purchased the property on his own account, paid all the purchase money, went into possession, and remained in partial possession even after plaintiff occupied the premises. But the main distinction between the two cases is that, in Piatt v. Seif, plaintiff, before beginning his suit, made a full tender not only of the amount expended by Magee, but of taxes and interest at six per cent from the date of the purchase to the date of the tender; whereas here no tender whatever has been made. Thus, in the Piatt Case, a decree for specific performance was not only just and proper, but could be readily enforced; whereas here, without regard to whether any contract giving rise to legal rights as between plaintiff and defendant has been shown, it is clear that no such contract has been proved as would warrant a decree for specific performance. Moreover, unless a new contract were in effect undertaken to be judicially made for the parties concerned, it is not apparent just what sort of a practical decree for specific performance could be entered and enforced, if a chancellor endeavored to formulate one.

We do not determine the interesting questions discussed in the opinions of the court below, concerning the jurisdiction of the alderman to entertain the possessory proceedings above referred to, because, as previously explained, such questions are not necessarily before us. Again, we do not determine whether plaintiff has any legal right to recover damages against defendant for a breach of contract; that is a point which can be adjudged only when and if it arises in the future. What we do determine is that, under the only prayer for relief which

is now before us, the court below did not err in refusing specific performance.

The decree dismissing the bill is affirmed at cost of appellant.