Glass et al., Appellants, *v.* Tremellen.

Argued October 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Earl Ogle, Jr.,* for appellants.—Defendant's evidence was insufficient to sustain the verdict: Johns v. Johns, 244 Pa. 48; Ackerman v. Fisher, 57 Pa. 457; Dill v. Westbrook, 226 Pa. 217; Rader v. Keiper, 285 Pa. 579; Breniman v. Breniman, 281 Pa. 304.

*D. P. Weimer,* for appellee, cited: Johns v. Johns, 244 Pa. 48; Greenawalt v. Hamilton, 4 Penny. 495.

OPINION BY MR. JUSTICE WALLING, November 26, 1928:

In this action of ejectment the plaintiffs, as children and legatees of Samuel Swank, deceased, seek to recover a five-sixth undivided interest in the house and lot known as 320 South Street, Johnstown. Defendant is the other child and legatee of said deceased and claims the entire property under an alleged parol gift from her father, followed by possession and improvements. She also claims title by adverse possession. The jury found in her favor and from judgment entered thereon the plaintiffs have appealed.

Upon the record title plaintiffs were entitled to recover unless prevented by the defense interposed. In 1900 Samuel Swank was the owner of a lot fronting seventy-five feet on South Street with his dwelling house located on the westerly half thereof. Defendant avers that in December of that year, shortly after her marriage, her father made her a parol gift of the easterly half of the lot and during the following winter built her a dwelling house thereon—320 South Street—of which she and her husband took possession in March, 1901, and have since occupied. The alleged gift being from father to daughter, must be supported by evidence that is direct, positive, express and unambiguous, bringing the parties face to face and showing the terms and conditions of the gift. See Breniman v. Breniman et al., Exrs., 281 Pa. 304; Dill v. Westbrook, 226 Pa. 217; Wright v. Nulton, 219 Pa. 253. As stated by Mr. Justice STRONG, for the court, in Ackerman v. Fisher, 57 Pa. 457, 459: "Nothing is more common than that a father speaks of a farm, upon which he has placed a son, as the son's farm, or a house in which he permits the son to live, as the son's house. It is every day's occurrence that a father speaks of having given a lot of ground to a son, when it is plain there was no intention to transfer the ownership......Were courts to look at the language of parents, expressed to others, as evidences of title in children, it would annihilate domestic confidence, and it would doubtless, in most cases, be giving an effect to loose declarations that was never intended......When an attempt is made to set up a parol contract of sale against a father, either by his son, or one claiming under the son, the evidence of the contract must be direct, positive, express and unambiguous. Not only must the terms and conditions of the contract and its subject be well and clearly defined, but it has been held that the contracting parties must be brought together face to face. The witnesses must have heard the bargain when it was made, or must have heard the par-

ties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties." To like import is Poorman v. Kilgore, 26 Pa. 365. Here the defendant's proof fails utterly; for it consists of the recollections of witnesses as to alleged loose declarations of the father, made some twenty-eight years ago, to the effect that he was building the house as a wedding present for the daughter, or that he had given it to her as such. None of these conversations was with the latter and, with possibly one exception, not made in her presence. One witness testified that the father said he was building the house individually for Nell [the defendant], for she was about the only one he could depend on. This did not show he had vested or would vest the title in her. There is no proof that the father ever actually made the gift. Parents often speak of their own property as that of their children, especially when the latter are occupying the same. These expressions are practically valueless on the question of title: Eckert v. Mace et al., 3 P. & W. 364. As the house was erected for the daughter's use, it signifies nothing that it was built after a plan she saw in a magazine.

Furthermore, a parol gift of land is invalid under the statute of frauds unless followed not only by change of possession but by the making of such permanent improvements on the property as could not be compensated for in damages. Here, again, defendant's case fails, for she did practically nothing to the property except necessary repairs and improvements, such as a tenant might be expected to make and for which she could readily be compensated in damages, if indeed the free use of the property was not sufficient compensation. See Rader v. Keiper, 285 Pa. 579; Bentfield v. Hastentenfel et al., 283 Pa. 264; also McKowen v. McDonald et al., 43 Pa. 441; Postlethwait v. Frease et al., 31 Pa. 472.

Having failed to establish either a parol gift or such permanent improvements as to take the case out of the statute of frauds on the assumption of a parol gift, the

only remaining question is that of adverse possession. Admittedly the defendant and her husband had been in possession of the property for twenty-six years prior to the bringing of this suit. Where a parent's property is occupied by a child, the presumption is, in the absence of any qualifying circumstances, that the possession is in subordination to the former's title. In other words, that the child holds as a licensee and not adversely. Where, however, a child takes and for twenty-one years retains exclusive possession of property under the claim and well grounded belief that he owns the same, by virtue of a parol gift from the parent, title thereto may be acquired by adverse possession, although the parent never actually made the parol gift: Campbell v. Braden, 96 Pa. 388. The child must show such facts and circumstances as to sustain a finding that he had reason to believe the parent had given it to him as his own. In the language of the present chief justice, speaking for the court, in O'Boyle v. Kelly, 249 Pa. 13, 16: "Where a defendant in ejectment claims title under an alleged parol gift from his father, and also by adverse possession, and the evidence is insufficient, by reason of the statute of frauds, to prove the gift, the defendant must show that his original entry 'was made in the honest belief that his father had given him the land' in fee, and to establish this he must prove facts sufficient to sustain a finding that he 'had reason to believe that his father had given it to him as his own';...... 'if he has shown no warrant for such belief, his entry will be presumed to have been under a license from his father, and therefore in subordination and allegiance to the latter's superior title.'" And see Johns v. Johns, 244 Pa. 48; Craig et al. v. Harbison et al., 4 Walker 488. Here again the defendant's case fails; for the evidence in support of the alleged gifts, to which we have called attention, is wholly insufficient to justify a belief that the father had made the daughter a parol gift of the real estate at issue. Hence, it must be held that the defendant took posses-

sion in subordination to her father's title. In which case, there is a presumption, not here rebutted, that the possession so continued and was not adverse. Mr. Justice STEWART, speaking for the court, in Johns v. Johns, supra, p. 54, says: "When the possession of one person is shown to have been once in subordination to the title of another, it will not be adjudicated afterwards adverse without clear and positive proof of its having distinctly become so; for every presumption is in favor of the possession continuing in the same subordination to the title: Rung v. Shoneberger, 2 Watts 23. The proof must reach so far as to show that the adverse possession assumed was brought to the knowledge of the holder of the title." In the instant case there is no such proof.

True, from 1901 to 1915, the house and lot were assessed in the name of defendant's husband and he paid the taxes, water rent, etc. Subsequent to 1915, because of a municipal requirement that real estate be assessed in the name of the recorded owner, the property was assessed in the father's name until his death in 1919, then in the name of his widow until her death in 1924 and since in the name of her estate. As we understand, the father's will, made in 1910, gives his wife the life use of his property and then divides it equally among his six children, but mentions no specific property. Other slight circumstances, tending to support the contentions of the respective parties, do not seem to require special mention. The defense set up, taken as a whole, was insufficient to overcome the record title.

The judgment is reversed and is here entered for the plaintiffs for the real estate described in the writ (being a five-sixth undivided interest), non obstante veredicto.