## Yarnall Estate.

Argued January 5, 1954. Before, STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

584

*Mabel B. Ditter,* with her *J. William Ditter, Jr.* and *Ditter & Ditter* for appellant.

*D. Stewart McElhone,* with him *Edward B. Duffy* and *Duffy, McTighe & McElhone,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1954:

In this orphans' court partition proceeding the question presented by the appeal is whether or not appellant has sufficiently proved a valid parol gift of a life estate in the real estate which ousts the jurisdiction of that court until the alleged disputed title is determined in an ejectment proceeding in the court of common pleas. The court below decided that appellant's testimony failed to establish the existence of such a dispute of title which would warrant the submission of the case to a jury in an ejectment proceeding and directed the inquest in partition to be made. The appeal followed.

I. Newton Yarnall died April 13, 1928, intestate, leaving to survive him a widow, Lillie I. Yarnall (appellant), and two children, Ethel Y. McMullin and I. Newton Yarnall, Jr. (appellees), his sole heirs and next of kin. At the time of his death decedent was seized of premises 1722 Bethlehem Pike, Flourtown, which was

the only real estate owned by him. Under the Intestate Act of June 7, 1917, P. L. 429, 20 PS 1.1 et seq., the widow and each child inherited an equal one third interest in his real and personal estate. At the time of the death of intestate the widow resided in the premises and still resides therein. Appellees, the two children of intestate, petitioned the orphans' court for partition of the real estate. Appellant, the widow, by her answer to the petition, contests the petition and claims: ". . . a life estate in the whole of said land by oral gift of [appellees], or, in the alternative, by an adverse possession continued for more than twenty-one years." The answer further alleges: "The present interest of each of [appellees] in said real estate is no more than a one-third remainder *after the death of [appellant]*." (Italics supplied)

A hearing was had upon petition and answer. Appellees and appellant testified. A niece of appellant also testified, in corroboration of appellant, concerning admissions alleged to have been made by appellees.

The alleged parol gift by appellees to appellant, according to appellant's testimony, was made: ". . . either . . . in [the lawyer's] office the day of the final settlement, [of the personal estate] or, at my home before the final settlement." The only persons present at the conversation were the appellees and the appellant. The alleged conversation, according to appellant, was: "A. My daughter said: 'We will give you your life right here, as long as you live, free of charge. And, we will also pay one-third of the taxes to help you.' One third of the taxes, I would say, in the neighborhood of up to four or five years . . . Q. Did your son say anything? A. Yes, he said he was perfectly satisfied for me to have my life right there. Q. Do you remember whether or not you said anything? A. I said it was o. k. with me. Q. After this conversation did you consider that the matter of the house was settled? A. For

me to live in as long as I lived? Q. Yes? A. Yes, I did." She also testified: "Q. But, [appellees] gave you a right to live in a house in which each of you had a third interest? A. That's right. Q. And, that when you died, your one-third interest would be divided between him and her? A. It naturally would."

Miss Gilbert, appellant's niece, testified that the daughter-appellee stated to her: ". . . Well, we gave mom a life right, we had no idea she would live all these years. We thought she would live a couple of years."

Appellant testified that the daughter-appellee and her husband resided with her in the premises for two or three years after the decease of appellant's husband (April 13, 1928). Appellant also testified that her children, the appellees, "granted [permission] to me" to use the house. She also testified that she made all repairs to the premises during her occupancy. Appellees denied that they had given appellant a life estate, but did authorize a permissive use by appellant for a limited time.

The court below should not pass upon the credibility of the testimony and decide whether or not the alleged parol gift of a life estate had, in fact, been made. *The extent of the present inquiry is to determine whether or not appellant's testimony and that of her witness, accepted as true, constitute a valid parol gift of a life estate in the real estate. If it does, then the jurisdiction of the orphans' court in partition is ousted and the determination of a disputed title must be relegated to the common pleas in ejectment.*

The Act of June 7, 1917, P. L. 337, sec. 1, as amended, 20 PS 1181, confers concurrent jurisdiction upon the orphans' court and the court of common pleas to partition real estate of one who died intestate leaving heirs. Under the terms of the Act, however, it is ". . . *Provided, That such court shall not have such juris-*

*diction during the continuance of any life estate in the whole of such real estate."* (Italics supplied)

It is a well established principle that a partition proceeding is not a proper remedy in which to settle a disputed title. Ejectment is the appropriate form of action: *Leahey v. O'Connor,* 281 Pa. 488, 495, 127 A. 65. But in order to obstruct a partition proceeding the disputed title must be one *in fact* and not one which is merely asserted. In *Becker Estate,* 352 Pa. 452, 43 A. 2d 4, we quoted with approval the language of Judge GEARHART who said (p. 455): "'. . . in proceeding in the orphans' court for partition of real estate, a mere assertion of title by a claimant does not ipso facto divest the orphans' court of jurisdiction. Thus it has been held that the court may take testimony to determine whether questions raised by the petition and answer warrant the submission of the case to a jury. If they do not, the court may proceed with partition. (Welch Appeal, 126 Pa. 297, 302, 303; McMahon's Est., 211 Pa. 292, 296; Est. of Wm. McCorkle, Deceased, 184 Pa. 626, 628; Sanders's Est., 41 Pa. Superior Ct. 77; Donohoe's Est., 5 D. & C. 165, affirmed 282 Pa. 254; Flannery's Est., 315 Pa. 576).

"'In Sanders's Estate in a partition proceeding arising in the orphans' court, President Judge RICE of the Superior Court writing the opinion of the court stated, "Upon the same principle it was the province and duty of the court in the present case to go beyond the denial of the petitioner's title and possession set up in their answer, and, if these were refuted by the undisputed facts, to award the inquest."' See also: Lloyd's Estate, 281 Pa. 379, 384, et seq., 126 A. 806."

We are therefore required to examine the testimony adduced by appellant and determine whether or not, *if believed,* it supports the claim of appellant that she possesses by *parol gift* a *life estate* in the real estate sought to be partitioned. If it does, then the juris-

diction of the orphans' court is unquestionably ousted and the dispute of title must be remitted to the court of common pleas for determination in an action of ejectment.

Appellant unequivocally bases her claim upon an alleged *inter vivos* gift from her children (appellees) of a life estate in the whole of the real estate in which she, as co-owner, possessed a one-third interest. There is no contention of the existence of a *contract* and payment of a valuable consideration. There is, however, a claim of adverse possession for over twenty-one years.

The Statute of Frauds, Act of March 21, 1772, 1 Sm. L. 389, sec. 1, 33 PS 1, requires a transfer of title to real estate to be in ". . . writing, or by act and operation of law". There may be a valid *parol inter vivos* gift of an interest, in whole or part, of real estate, where such gift is followed not only by a change of possession, but by the making of such permanent improvements on the property as could not be compensated in damages. In *Glass v. Tremellen*, 294 Pa. 436, 144 A. 413, Justice WALLING said (p. 439) : ". . . a parol gift of land is invalid under the statute of frauds unless followed not only by change of possession but by the making of such permanent improvements on the property as could not be compensated for in damages. Here, again, defendant's case fails, for she did practically nothing to the property except necessary repairs and improvements, such as a tenant might be expected to make and for which she could readily be compensated in damages, if indeed the free use of the property was not sufficient compensation. See Rader v. Keiper, 285 Pa. 579; Bentfield v. Hastenteufel et al.; 283 Pa. 264; also McKowen v. McDonald et al., 43 Pa. 441; Postlethwait v. Frease et al., 31 Pa. 472."

In *Stewart v. Stewart*, 3 Watts 253, this Court, in a *Per Curiam* opinion, said (p. 255) : "The point in this case was decided in Eckert v. Mace, 3 P. & W. 364,

where it was expressly said that a parol gift to a son is as much affected by the Statute of Frauds, as if it were to a stranger; nor was it pretended in Eckert v. Eckert, Id., or in Syler v. Eckhart, 3 Binn. 378, that such a gift would be valid, if not followed by improvements. To take a parol contract out of the statute, it is necessary not only that it be partly performed by delivery of the possession, but that it be on a valuable consideration paid or secured to be paid; or in the case of a gift, that there be an expenditure of money or labor in consequence of it, which comes to the same thing; and this for the plain reason that no equity arises from the naked delivery of the possession, and without a specific equity a chancellor would not interfere to compel a conveyance or execution of the contract."

This principle is well expounded by Judge MORRISON in *Brewer v. Lohr*, 35 Pa. Superior Ct. 461, where (p. 464) he quoted Justice GORDON in *Sower's Admr. v. Weaver*, 84 Pa. 262, who said that the validity of a parol contract for sale of land depends upon whether it is a case which would "entitle [plaintiff] to a decree of specific performance". Also "equity will not enforce a contract the consideration of which is only natural love and affection". It is further quoted: " '. . . Such will also be the case with a gift where, *in pursuance thereof,* possession has been taken and valuable improvements have been made; this a fortiori, where this possession has been undisturbed for a great length of time or where the improvements have added largely to the value of the property.' " (Italics supplied)

In *Eckert v. Mace*, 3 P. & W. 364, this Court held (p. 365): ". . . There *may* be such a thing as a sale [of land] to a child by parol, or a gift rendered valid by improvements, but such a case requires much stronger and clearer evidence than would be necessary to establish a similar transaction between strangers, . . . it

ought to be proved fully, satisfactorily, and almost beyond the possibility of mistake." In *King v. King,* 273 Pa. 351, 116 A. 892, we held that such testimony must be "clear, precise and indubitable: [citing cases]". The whole problem was encompassed by our present Chief Justice HORACE STERN in *Rarry v. Shimek,* 360 Pa. 315, 62 A. 2d 46, wherein it was decided: "The requisites for the creation of a valid parol gift of land notwithstanding the Statute of Frauds of March 21, 1772, 1 Sm. L. 389, . . . are (1) that the evidence of the gift be direct, positive, express and unambiguous; (2) that possession be taken in pursuance of the alleged gift at the time or immediately after it is made, and that such possession be exclusive, open, notorious, adverse and continuous; (3) that the donee make valuable improvements on the property for which compensation in damages would be inadequate . . . stronger evidence is required of the donor's intention to part with his ownership in such transactions [between parent and child] than in those between persons who are not blood relatives . . . the requirement of the law that the improvements be such that compensation would be inadequate does not mean . . . that no amount of compensation, however large, would be sufficient, but that it would be impracticable, if not impossible, to determine such amount with any fair degree of accuracy by ordinary and available standards." Many cases are cited in the opinion, and its footnotes, which amply sustain the decision.

With the foregoing principles as a guide we have examined the testimony of appellant. Her testimony is not "direct, positive, express and unambiguous". The arrangement clearly indicates that appellees did not intend a gift or transfer of a life estate. The "life right" which she asserts was merely a *permissive use.* Appellant said that she and her two children were each to pay one-third of the taxes and this only "in the

neighborhood of up to four or five years". If, as she now claims, she was given a life estate, why would the two co-owners each pay one-third of the taxes? A further ambiguity is apparent from her testimony that upon the termination of her life estate her "one-third interest (in remainder) would be divided between [appellees]".

We also note that possession was not taken by appellant *in pursuance* of and immediately following the alleged parol gift. Appellant continued to occupy the premises after her husband died. Thereafter the daughter and her husband resided with her continuously for two or three years. It was not until the distribution of the personal estate of the intestate that the alleged parol gift is purported to have been made. Thereafter her occupancy continued: *Christy v. Barnhart*, 14 Pa. 260; *Workman v. Guthrie*, 29 Pa. 495; *McCormick's Appeal*, 57 Pa. 54.

Appellant does not contend that she had made valuable improvements on the property for which compensation would be inadequate. She did pay for the repairs and maintenance, but nothing more. As stated in *Glass v. Tremellen*, supra, payment of taxes and maintenance could easily be compensated in damages, and free use of the property would be ample compensation for such expenditures.

We need not discuss the question of adverse possession since, according to appellant's testimony, her occupancy was neither "hostile [n]or adverse": *Llewellyn v. Stewart*, 155 Pa. Superior Ct. 535, 39 A. 2d 323. she went into possession not adversely, but permissively. Cf. *Cannon v. Jackson*, 252 Pa. 257, 97 A. 468; *Hanley v. Buechley*, 198 Pa. 642, 48 A. 864. It is obvious that Since the heirs and next of kin are the owners in fee of the real estate, delay in seeking partition will not bar the owners because of laches. Citation of authorities is unnecessary.

It is indeed unfortunate that these appellees, children of appellant, are in litigation with their mother. To question the veracity of their mother, the children are in conflict with the Fifth Commandment. But as the distinguished Justice JEREMIAH S. BLACK said in *Jenkins v. Fowler*, 24 Pa. 308, *"Malicious motives make a bad act worse; but they cannot make that wrong which, in its own essence, is lawful"*. (Italics supplied) Intestate's children have the lawful right to receive their inheritance. To enforce the lawful rights of these children against their mother need not be greatly regretted since the mother admits that she has a few thousand dollars in bank, owns a mortgage and also notes of debtors. There appears no reason why partition should be denied, as the children are entitled to receive their lawful shares in this real estate.

The decree is affirmed at the cost of appellant.