## Tinney v. Hagerty

*Richard D. Banks*, for plaintiff.
*Joseph P. Phelps, Jr.*, for defendant.

BROWN, J., February 29, 1980—Plaintiff Lucy Anne Tinney resides now and has resided since February 1, 1979 in a house in Horsham titled in the name of defendant, Charles F. Hagerty. She brings this action to enforce a parol promise by Hagerty to convey the property to her, the consideration being love and affection.

Lucy and Charles first met in March of 1977, while Lucy was tending bar in a local watering hole frequented by Charles. Lucy was living in Hatfield, but at Charles' suggestion moved in November, 1977 to a more expensive apartment nearer to her place of employment and incidentally, nearer to where Charles lived and worked. He paid the rent. This relationship continued into 1978 but during the summer of that year they quarreled and broke up. A short time later they made up and Charles promised to buy Lucy a house of her very own, Lucy probably realizing in this day of inflated land prices that houses, not diamonds, are a girl's best friend.[1] Shortly thereafter they picked out a lot in a housing development and on August 11, 1978, Charles gave Lucy $200 as a deposit to hold the lot. On August 24, Charles entered into an agreement of sale with the developer, paying out an additional $5,265 as earnest money.

In due time the house was completed and Charles took title by deed on January 29, 1979. Lucy moved in on February 1, but not before executing a one year lease for a monthly rental of $200, a figure well below the property's rental value. However, that was of little consequence since there was never any intention that Lucy pay the rent anyway, the lease apparently being a device to give credence to Charles' plan to claim the property as an investment for tax purposes. In addition to paying for the house, Charles furnished it to the tune of more than $8,500, all selections made by Lucy.

The rent that wasn't to be paid was demanded in August, 1979, when Charles and Lucy had another, and this time a permanent, falling out. When the

---

1. With apologies to the author of "Gentlemen Prefer Blondes."

rent which was not to be paid remained unpaid, despite the demand, Charles turned to the law to eject Lucy. But Lucy did not cut and run; she countered with this action. In defense, Charles calls on an old and venerable ally to repel this thrust into his ample treasure, the Act of March 21, 1772, 1 Sm. L. 389, 33 P.S. §17 the Statute of Frauds:

". . . [A]ll leases, estates, interests of freehold or term of years . . . made . . . by parol, and not put in writing and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates . . . notwithstanding."

So it seems unless plaintiff can find some way around this language, diamonds are a girl's best friend after all.

"A valid parol gift of land . . . [may be effective] notwithstanding the Statute of Frauds, . . . [if] (1) . . . the evidence of the gift be direct, positive, express and unambiguous; (2) . . . exclusive, open, notorious, adverse and continuous possession be taken in pursuance of the alleged gift at the time or immediately after it is made; (3) . . . the donee make[s] valuable improvements on the property, for which compensation and damages would be inadequate." Yarnall Estate, 376 Pa. 582, 590, 103 A. 2d 753 (1954).

Elsewhere in the Yarnall Estate, the first requirement is said to be evidence which is "clear,

precise and indubitable." Evidence of a gift here is not direct, positive, express and unambiguous, or clear, precise and indubitable. On the contrary, we have at most a promise repeated several times to make a gift in the future, all of such promises having been made before the execution of the agreement of sale on August 24, 1978.

It does appear that Lucy did occupy the premises shortly after settlement, although hardly adversely given the nature of their relationship. The exclusiveness of that possession is also put in some doubt by the lease, sham though we find it to be. As to the third requirement, that improvements be made by the one attempting to avoid the statute, there is not the proverbial scintilla of evidence that Lucy put a dime in the property after she moved in. So her case fails at least two of the three tests for avoiding the statute, all of which must be met to do so.

So the direct, positive, express, unambiguous, clear, precise and indubitable lesson of this tale, girls (and boys, too), is get it in writing before those "louses go back to their spouses."[2]

Accordingly we enter the following

## DECREE NISI

And now, February 29, 1980, plaintiff's complaint is dismissed.

Unless exceptions are filed within ten days of the notice hereof, this decree shall be entered as, of course, by the prothonotary as the final decree of the court.

---

2. With further apology to "Gentlemen Prefer Blondes."