**Richard M. TARR, t/d/b/a G & S Appliance Company**

v.

**GENERAL ELECTRIC COMPANY, a corporation.**

**Civ. A. No. 75–1261.**

United States District Court,
W. D. Pennsylvania.

Sept. 16, 1977.

Samuel Pasquarelli, Pittsburgh, Pa., for Richard M. Tarr.

Alexander H. Lindsay, Thomas F. Weis, Pittsburgh, Pa., for General Electric Co.

MEMORANDUM

SORG, District Judge.

The above-named plaintiff, Richard M. Tarr (Tarr), was, from 1965 until February 6, 1975, a franchised dealer in products manufactured by the defendant, General Electric Company (G.E.). Late in 1972, Tarr brought a treble damage action against G.E. alleging violations of the Sherman Anti-Trust Act. During the pendency of that action, i. e., February 6, 1975, Tarr's franchise was terminated by nonrenewal of the franchise agreement between the parties in accordance with the terms thereof. Civil Action 72–1118 was subsequently terminated on April 8, 1975, by the granting of summary judgment in favor of G.E. on the basis of Tarr's having previously executed releases for the damages claimed.

On October 3, 1975, Tarr filed the complaint in the above-entitled action, asserting in Count 1 thereof price discrimination in violation of the Robinson-Patman Act, 15 U.S.C.A. § 13(a). For reasons not material

---

to the matter now before the Court, summary judgment in favor of G.E. as to this count of the complaint was entered on September 8, 1976.

G.E. now moves to dismiss Count II of the plaintiff's complaint which reads as follows:

11. The Defendant insisted as part of the negotiations to settle the aforesaid litigation and as part of the negotiations to renew Plaintiff's franchise, that the Plaintiff specifically and expressly waive any and all rights of the Plaintiff to object to or raise any claim concerning Defendant's violation of the anti-trust laws of the United States from and after December 27, 1973, and that Plaintiff agreed to business restrictions upon his proposed renewal franchise not required of other franchisees of Defendant, including a term of franchise of four (4) months, as opposed to the normal franchise time of one (1) year.

12. The Defendant's insistence as aforesaid was calculated to coerce the Plaintiff to abandon his rights under the anti-trust laws by the actual threat of refusing to renew Plaintiff's business franchise, which franchise Plaintiff had held for in excess of ten (10) years, and Defendant's ultimate refusal to renew Plaintiff's franchise was in retaliation against Plaintiff for commencing the litigation at No. 72–1118 aforesaid and for insisting upon preserving his rights under the anti-trust acts, said franchise being cancelled by the Defendant on February 6, 1975.

13. As a result of Defendant's cancellation of Plaintiff's franchise, Plaintiff has been compelled to cease doing business as a franchised General Electric dealer, and his loss of position as a franchised dealer as aforesaid has adversely affected, and will adversely affect his business, causing Plaintiff a loss of sales and profits.

On page 1 of plaintiff's brief, the issue is framed as follows:

Summary judgment has heretofore been granted in favor of the defendant and against the plaintiff with respect to the anti-trust action, such that the only matter remaining for trial is the Second Count of plaintiff's Complaint, which alleges that the defendant illegally and improperly refused to renew the plaintiff's franchise agreement. The plaintiff asserts that the reason for the defendant's failure to renew the agreement was that the defendant desired to retaliate against the plaintiff for the plaintiff having filed an earlier anti-trust action against the defendant in this Court at No. 72–1118.

In essence, then, the single remaining claim of the plaintiff in the pending action is in the nature of tort, asserting a right to freedom from coercion in his pursuit of legal remedies under the anti-trust laws. The controlling principles are set forth in *House of Materials, Inc. v. Simplicity Pattern Co.,* 298 F.2d 867 (2d Cir. 1962).

Assuming as we do that the proof warranted the inference that Simplicity's action was motivated by Materials' prosecution of the treble damage action, appellant has done nothing except exercise its right to terminate the contract in accordance with its terms.

\* \* \* \* \* \*

[W]e believe that . . . Simplicity's refusal to deal constituted a tort. It has been recognized that an intentional infliction of injury is a "prima facie" tort which requires justification or excuse if it is not to create a liability. [Citations omitted.] What amounts to legal justification or excuse depends on "principles of policy." [Citations omitted.] In this connection, it generally has been held that "fundamental assumptions in free business enterprise," including the belief that "each business enterprise must be free to select its business relations in its own interest, may justify or excuse the act of one who causes harm to another as a collateral consequence of his refusal to continue a business relation terminable at will." [Citations omitted.]

298 F.2d at 870, 872.

As aptly stated in *Yarnall's Estate,* 376 Pa. 582, 592, 103 A.2d 753, 759 (1954), quot-

ing *Jenkins v. Fowler,* 24 Pa. 308, 310 (1855):

> [M]alicious motives make a[n] bad act worse; but they cannot make that wrong which, in its own essence, is lawful.

It is concluded that Count II of plaintiff's claim sets forth, at most, *damnum absque injuria.*

An appropriate order will be entered.