**BRIERWOOD SHOE CORPORATION,**
**Plaintiff,**

v.

**SEARS, ROEBUCK, AND CO.,**
**Defendant.**

**No. 79 Civ. 2832.**

United States District Court,
S. D. New York.

Oct. 21, 1980.

---

Shea & Gould by Milton Gould and Dean Yuzek, New York City, for plaintiff.

Fried, Frank, Harris, Shriver & Jacobson by Leon Silverman, Matthew Gluck, Gregory Joseph, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By motion filed September 22, 1980, defendant Sears, Roebuck and Co. ("Sears") moved in this case for "partial" summary judgment pursuant to Rule 56, Fed.R.Civ.P.

Plaintiff Brierwood Shoe Corporation ("Brierwood") is a Pennsylvania corporation which, when the action was filed on June 1, 1979, was engaged in manufacture of various types of men's, women's and children's shoes. It employed approximately 2,300 persons in 14 plants. Defendant Sears, a New York corporation, is a large retailer of general merchandise, including shoes.

On October 3, 1971, Sears and Brierwood entered into a written basic buying agreement ("Agreement") whereby Brierwood agreed to manufacture and Sears to purchase various percentages of Sears requirements of men's, women's and children's shoes. Sears received the option to require Brierwood to manufacture and sell to Sears additional quantities of shoes pursuant to the terms of the Agreement. The Agreement set forth a procedure for production and ordering of the shoes, and also set forth a formula for determining the contract price of the shoes.

On April 10, 1979 Sears gave notice that it would terminate the Agreement in October, 1980, pursuant to the terms of Paragraph 16 thereof. That notice gave rise to this litigation, consisting of three separate federal lawsuits. On May 30, 1980 this Court granted Brierwood's motion to consolidate three pending actions involving Sears, Brierwood, and Kleinert's, Inc. and to file a second amended complaint.

Sears and Brierwood filed a consolidated pre–trial order on July 21, 1980 and argument on this motion for partial summary judgment was heard on October 1, 1980. Both parties have filed briefs and reply briefs.

Subject matter jurisdiction exists under 28 U.S.C. § 1332, 15 U.S.C. §§ 15 and 26, and pendent jurisdiction. The parties have stipulated that the law of Pennsylvania governs the non–federal claims pleaded.

The pre–trial order contains sixteen separate claims for relief by Brierwood.

While Rule 56, Fed.R.Civ.P., authorizes a claimant or a defendant to move for summary judgment in a case as to "all or any part thereof," Rule 56 does not provide for a "partial" summary judgment that is a *final* judgment. *See* 6 Pt. 2 Moore's Federal Practice ¶ 56.20[3.–2]. Rather, in combination with Rule 16, Fed.R.Civ.P., which sets forth the procedure for formulating a pre–trial order, this Court will treat the motion for "partial" summary judgment in this case as a means of separating those claims which need to be tried from those which can be disposed of because they do not involve any relevant disputed factual issues.

For purposes of this motion, we must accept the facts as alleged in the light most favorable to the non–moving party. We consider the separate points below.

### Prima Facie Tort

Sears argues that Pennsylvania does not recognize a claim for *prima facie* tort, while Brierwood asserts the opposite. Both rely upon *Tarr v. General Electric Co.*, 441 F.Supp. 40 (W.D.Pa.1977): In that case, a franchised dealer of General Electric ("GE") products had his franchise terminated by GE by non–renewal in accordance with the terms of the franchise agreement. *Id.* at 40. Plaintiff in that case claimed that it was terminated in retribution for having filed an antitrust action against GE. *Id.* at 40. The district court held that the plaintiff's claim set forth "*damnum absque injuria.*" *Id.* at 42.

Brierwood has cited no Pennsylvania cases which have recognized a cause of action for *prima facie* tort and the Court has been able to find none. Rather, as noted by the *Tarr* court, the Pennsylvania Supreme Court has stated:

> "Malicious motives make a[n] bad act worse, but they cannot make that wrong which, in its own essence, is lawful."

*Yarnall's Estate*, 376 Pa. 582, 592, 103 A.2d 753, 759 (1954), quoting *Jenkins v. Fowler*, 24 Pa. 308, 310 (1855).

 If the termination of the Agreement by Sears did not constitute a breach of contract or a tortious interference with contractual relations, the mere assertion that Sears acted maliciously does not give rise to a tort in Pennsylvania.

### Sherman Act Claims

Brierwood's claims under section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq., are based on its contention that Sears had the practice of charging Brierwood a greater price for raw materials than Sears itself had paid for the materials. These raw materials were used by Brierwood in the manufacture of shoes later sold to Sears.

Brierwood alleges, first, that Sears had a resale price maintenance agreement with "certain raw materials vendors," whereby Sears was compelled to abide by price lists furnished by the raw materials vendors. Brierwood also alleges that Sears engaged in reciprocal dealing, using its buying power under the Agreement to force Brierwood to buy raw materials from Sears at disadvantageous terms.

### 1. *Resale Price Maintenance*

Sears argues that Brierwood's Sherman Act claims are barred because Brierwood suffered no competitive injury, as required by the Clayton Act § 4, 15 U.S.C. § 15, which provides the treble damage remedy for Sherman Act violations. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *GAF Corporation v. Circle Floor Co., Inc.*, 463 F.2d 752, 757 (2d Cir. 1972), *cert. denied*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973).

■ While resale price maintenance agreements are *per se* violative of the Sherman Act, *see Yentsch v. Texaco, Inc.*, 630 F.2d 46 (2d Cir., 1980), a plaintiff has no standing to challenge such an agreement if it has suffered no competitive injury. Brierwood must be able to prove that the "illegal restraint of trade injured [its] *competitive position* in the business in which [it] is or was engaged." *GAF Corp., supra*, at 758 (emphasis in original). The plaintiff in *GAF Corp.* had alleged that its sales to the defendant had decreased in volume and that plaintiff had thereby suffered lost profits. *GAF* had not, however, shown an inability to sell floortile such that its ability to compete in the entire market place was damaged. *Id.* at 759.

■ Brierwood has not met the requirements enunciated in *GAF Corp.* for showing competitive injury. The raw materials that Brierwood purchased from Sears were used in the manufacture of pre–ordered lots of shoes for Sears. Although Sears and Brierwood offer different interpretations as to how this pre–ordering arrangement operated in practice, an analysis of both versions leads to the conclusion that Brierwood suffered no competitive injury. Sears states that the raw materials arrangement with Brierwood operated in the following manner: Sears ordered a certain amount of shoes from Brierwood; sold Brierwood raw materials with which to manufacture those shoes; and then purchased the shoes ordered according to the cost–plus profit provision in the Agreement. This fact situation presents the narrow case in which the Supreme Court has indicated that a pass–on defense would be available to the seller. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735–36, 97 S.Ct. 2061, 2069–2070, 52 L.Ed.2d 707; *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494, 88 S.Ct. 2224, 2232, 20 L.Ed.2d 1231 (1968).

Brierwood argues that "the price of raw materials ... impacted on the future cost to Sears of the footwear by raising the price that Sears would have to pay for the finished shoes," and that therefore "Sears' ability to sell shoes in the marketplace is affected, resulting ... in the placing by Sears of fewer orders with Brierwood." This scenario could be the possible result in any cost–plus contract. However, as stated above, the Supreme Court has indicated that in such a situation the seller would be entitled to rely on a pass–on defense.

Brierwood also argues that it did not buy raw materials from Sears pursuant to a cost–plus contract because, under ¶ 4 of the Agreement, if Brierwood was not competitive with other manufacturers, Sears had the option not to buy from Brierwood unless Brierwood lowered its prices to meet the competition. Under this arrangement, Brierwood did not suffer from an inability to compete in the marketplace, but was in fact given the option of competing in the marketplace. Thus, because Brierwood suffered no competitive injury, no valid claim under the Sherman Act for a resale price maintenance agreement has been presented.

### 2. *Reciprocal Dealing*

■ Reciprocal dealing claims founded, as is plaintiff's, on the theory that goods

are being traded to the plaintiff on disadvantageous terms, are not *per se* unlawful under the Sherman Act. This is so because the reciprocal arrangement may actually be mutually advantageous to the parties involved. *Industria Siciliana Asfalti, Bitumi v. Exxon*, [1977–1] Trade Cas. ¶ 61,256, 70,-779 (S.D.N.Y.1977). In such case, the plaintiff must prove that it entered into the arrangement because coerced by the defendant. *Id.* Coercion may be demonstrated by showing that defendant possessed a great influence over the market for the party's product and that the defendant actively exploited its position. *Id.* at 70,780.

■ Brierwood makes no allegations that Sears possessed a great deal of influence over the market for shoes available to Brierwood. Although Brierwood does state that Sears had "influence over the market for Brierwood's shoes.... Sears purchased approximately 80% of Brierwood's production," this arrangement was pursuant to the Agreement between the parties. Brierwood does not allege that this Agreement was not freely made; in addition, Brierwood had the option at all times to terminate the Agreement on one year's notice. This is not the type of market power which the Sherman Act is meant to prohibit. While Brierwood states that it was coerced into buying raw materials from Sears, this coercion at most took the form of Sears' threat to stop buying shoes from Brierwood. Brierwood could have refused to buy the raw materials from Sears, been terminated and then sold its shoes anywhere.

Thus, no valid claim under the Sherman Act for reciprocal dealing has been presented.

### Conclusion

In accordance with the foregoing, the Court grants partial summary judgment dismissing Brierwood's *prima facie* tort and antitrust claims. As to all other claims challenged in Sears' motion for partial summary judgment, Sears' motion is denied and the merits of those claims will be determined at trial.

So Ordered.