**BLACK GOLD, LTD., a Colorado corporation, Plaintiff-Appellee and Cross-Appellant,**

v.

**ROCKWOOL INDUSTRIES, INC., a Delaware corporation, Defendant-Appellant and Cross-Appellee.**

**Nos. 80–2098, 80–2143, 82–1176 and 82–1177.**

United States Court of Appeals, Tenth Circuit.

April 18, 1984.

John W. Madden, III and Kenneth R. Bennington of Brownstein Hyatt Farber & Madden, and Thomas D. Smart, Jr. of Smart, DeFurio, Brooks & Eklund, Denver, Colo., for Black Gold, Ltd.

Jeffrey L. Smith of Cohen, Brame & Smith, Denver, Colo.; John G. Wigmore and Richard C. Neal of Lawler, Felix & Hall, Los Angeles, Cal., for Rockwool Industries, Inc.

---

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Rockwool has petitioned the panel for rehearing in *Black Gold, Ltd. v. Rockwool Industries, Inc.,* 729 F.2d 676 (10th Cir. 1984), urging us to reconsider our determination that the record contains sufficient evidence of a tying combination or conspiracy to withstand a motion for directed verdict. Rockwool contends that the Supreme Court case of *Monsanto Co. v. Spray-Rite Service Corp.,* — U.S. —, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), decided after our opinion, compels a contrary result. We disagree and affirm our panel decision with the following addendum.

■ In *Monsanto* the Court considered what evidence is sufficient to create a jury issue on whether a manufacturer and some of its distributors were parties to an agreement or conspiracy prohibited by the antitrust laws. Under *Monsanto,* evidence must be produced reasonably tending "to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" — U.S. at —, 104 S.Ct. at 1471 (quoting *Edward J. Sweeney & Sons v. Texaco, Inc.,* 637 F.2d 105, 111 (3d Cir. 1980)). Among other things, the Court noted that a threat to cut off a nonacquiescing distributor during a time when the product is in short supply is probative evidence of concerted action because it permits a jury to conclude that the manufacturer "sought this agreement at a time when it was able to use supply as a lever to force compliance." *Id.* at n. 10.

■ In view of this specific example, we do not construe *Monsanto* as a retreat from those cases holding that a combination occurs between a seller and buyers "whose acquiescence in [the seller's] firmly enforced restraints was induced by 'the communicated danger of termination.'" *Perma Life Mufflers v. International Parts Corp.,* 392 U.S. 134, 142, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982 (1968) (quoting *United States v. Arnold, Schwinn & Co.,*

388 U.S. 365, 372, 87 S.Ct. 1856, 1862, 18 L.Ed.2d 1249 (1967)). In the case before us, the voluminous record contains evidence sufficient to create a jury issue on whether Rockwool used the high demand for blown wool in the PSC program as leverage to obtain acquiescence in an illegal tying arrangement, and whether Black Gold was terminated as "part of or pursuant to that agreement." *Monsanto,* — U.S. at —, 104 S.Ct. at 1472.

We have reviewed Rockwool's other arguments for rehearing and we are not persuaded by them.