**MONAHAN'S MARINE, INC., Plaintiff,**

v.

**BOSTON WHALER, INC., et al., Defendants.**

**CA No. 82-3376-T.**

United States District Court,
D. Massachusetts.

Oct. 19, 1987.

Robert Loventhal, Loventhal & Shamban, Braintree, Mass., Steven M. Trattner, Washington, D.C., for plaintiff.

Thomas N. O'Connor, William F. Lee, Thomas J. Sartory, Hale & Dorr, Boston, Mass., for defendants.

Gerald A. Rosenthal, Gadsby & Hannah, Boston, Mass., for Port Marine.

Paul Farrell, Farrell, Duffy & Farrell, Falmouth, Mass., and William A. Brown, Brown & Prince, Boston, Mass., for Falmouth Harbor Yacht Sales, Inc.

## MEMORANDUM

TAURO, District Judge.

This lawsuit arose from disagreements between plaintiff Monahan's Marine, Inc., a boat retailer, and defendant Boston Whaler, Inc. (Whaler), a boat manufacturer. Plaintiff, an authorized Whaler dealer until its dealership was terminated in 1982, has also named as defendants two of its competitors: Falmouth Harbor Yacht Sales, Inc. (Falmouth) and Port Marine Center, Inc. (Port Marine).

Asserting generally that Whaler and the named competitor defendants have participated in "special deals," plaintiff advances an antitrust claim based upon § 1 et seq. of the Sherman Act, along with pendent state claims for breach of contract and unfair trade practices. At issue now are plaintiff's motion for summary judgment on the antitrust claim and Whaler's cross-motion for summary judgment as to all claims.

These motions were referred to Magistrate Cohen, who subsequently issued a comprehensive 37–page Report and Recommendation urging that defendants be granted summary judgment. Plaintiff filed timely objections to the Magistrate's report, while Whaler requested clarification on six points.

### I.

Plaintiff's grievance stems from several transactions that are alleged to constitute "special deals" between Whaler and plaintiff's competitors:

#### 1. *The bulk sale to Falmouth.*

In August, 1981, Whaler sent several truckloads of boats to Falmouth, at Whaler's expense, in exchange for a 10% down payment. Plaintiff claims this transaction violated Whaler's general policy of demanding cash on delivery and requiring that dealers pay transportation costs.

#### 2. *Movement of "listed" boats to Melle's.*

Whaler dealers sell both new and "listed" boats, the latter being "seconds" that are used, cosmetically defective, or have warranty problems. Prior to 1982, Whaler stored all listed boats at its facilities in Rockland, MA and Norwell, MA. In 1982, Whaler moved 25 of the listed boats to Melle's Fiberglass Shop in Mashpee, MA. Plaintiff asserts that Melle's was under the control of Falmouth, to whom the boats were eventually sold on open account. Plaintiff alleges that this shipment violated several of Whaler's policies.

#### 3. *Bulk sales to Port Marine.*

In June, 1982, Whaler sold 31 boats to Port Marine on favorable terms and conditions that plaintiff contends violated Whaler policies. In January, 1983, Whaler sold 51 more boats to Port Marine on similar terms.

### II.

█ The Sherman Act prohibits any "contract, combination ... or conspiracy" in restraint of trade. 15 U.S.C. § 1. To prevail in a § 1 antitrust case, a plaintiff must allege and prove concerted action in restraint of trade. Individual action, as a rule, is not proscribed. *Fisher v. City of Berkeley, Cal.*, 475 U.S. 260, 106 S.Ct. 1045, 1049, 89 L.Ed.2d 206 (1986) (even where single firm's restraints directly affect prices and have same economic effect as concerted action might have, there can be no liability under Sherman Act § 1 in absence of agreement); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767–68, 104 S.Ct. 2731, 2739–40, 81 L.Ed.2d 628 (1984) (§ 1 of Sherman Act does not reach unilateral conduct, even when single firm appears to "restrain trade" unreasonably); *Ford Motor Company v. Webster's Auto Sales, Inc.*, 361 F.2d 874, 878 (1st Cir.1966) ("Fundamental ... to any section 1 violation is the finding of an agreement between two or more parties"); *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 110 (3d Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981) ("Unilateral action, no matter what its motivation, cannot violate § 1"); 2 J. Von Kalinowski, *Antitrust Laws and Trade Regulation* § 6.01(2) (1986) (offenses under § 1 of Sherman Act

require "participation of two or more persons in a common scheme of action," and "[a] single corporation acting alone cannot violate § 1").

■ The nub of plaintiff's lawsuit involves facially unilateral acts of price discrimination by Whaler.[1] Plaintiff argues that such acts of price discrimination amount to a cognizable § 1 claim because Whaler's "special deals" are "contracts" and, therefore, necessarily involve concerted action. This court disagrees.

Accepting all plaintiff's allegations, the specific actions that allegedly "restrained trade" were no more than unilateral acts of price discrimination by Boston Whaler. Plaintiff's competitors did not act in concert with each other. Rather, they merely accepted the favorable terms offered to them individually. They had no part in Whaler's decision as to what price and terms would be given plaintiff. The decision to set different terms for different dealers was an independent decision by Whaler.

The Sherman Act requires more. "Independent action is not proscribed. A manufacturer of course generally has a right to deal with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). For a § 1 claim to succeed, therefore, "the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Id.* In other words, "There must be evidence that tends to exclude the possibility that the manufacturer and the non-terminated distributors were acting independently." *Id.* Here, there is no such evidence.

Plaintiff responds to this analysis in two ways. First, plaintiff argues, this case involves *contracts* in restraint of trade, while

*Monsanto* decided only the amount of evidence that was required in the absence of a contract to make a prima facie case of a combination or conspiracy. Nothing in *Monsanto* suggests, however, that the requirement of concerted action is met by the mere circumstance of there being a contract. *See also, e.g. Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., supra,* 637 F.2d at 111 (Sherman Act's language "presents a single concept about common action, not three separate ones"); 2 J. Von Kalinowski, *supra,* at § 6.01 ("The technical differences between contract, combination and conspiracy are, however, of little moment in analysis of § 1."). Whaler's unilateral price discrimination is what underlies plaintiff's factual allegations. The individual contracts with plaintiff's competing creditors are merely memorializations of that price discrimination.

■ Second, plaintiff asserts that price discrimination itself violates the Sherman Act. This contention cannot be sustained against the unbroken line of cases, cited above, holding that unilateral action—no matter how much it restrains trade—simply does not fall within the ambit of § 1. Price discrimination, unless it is accompanied by concerted action or an illegal agreement, does not violate the Sherman Act. *See AAA Liquors, Inc. v. Joseph E. Seagram & Sons,* 705 F.2d 1203, 1207 (10th Cir.1982), *cert. denied,* 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983) ("We do not think Section One of the Sherman Act requires the manufacturer to offer the same price to all its customers or even to all in a particular geographical area"); *Zoslaw v. CBS, Inc.,* 533 F.Supp. 540, 553 (N.D.Cal.1980), *aff'd on this ground, rev'd in part on other grounds and remanded sub nom. Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983) ("In the absence of a horizontal conspiracy to charge different prices or a vertical agreement to exclude

---

1. Plaintiff, in fact, originally based its claim on the Robinson–Patman Act, 15 U.S.C. § 13 et seq., which forbids certain types of price discrimination. Since all the offending deals were made within the state of Massachusetts, how-ever, plaintiff was unable to meet the Robinson–Patman Act's jurisdictional requirement of interstate commerce. Plaintiff was thus compelled to recast its complaint as an action under § 1 of the Sherman Act.

competitors, price discrimination does not support a claim under Section 1 of the Sherman Act"); *Blake Associates, Inc. v. Omni Spectra, Inc.*, 1982–83 Trade Cas. (CCH) ¶ 65,155 (D.Mass.1982) (price discrimination arguably in violation of Robinson–Patman Act, "even if proved, would not subject Omni to liability under the Sherman Act because there is no evidence that [it was] undertaken as part of a 'contract, combination ... or conspiracy'"); *Crowl Distributing Corp. v. Singer Co.*, 543 F.Supp. 1033, 1037 (D.Kan.1982) ("Of course, price discrimination per se has never been considered to fall within the scope of the Sherman Act ... indeed, the Robinson–Patman Act was enacted precisely in order to fill a perceived loophole in pre-existing antitrust laws").[2]

### III.

■ Even assuming, for the purpose of argument, that price discrimination alone could violate the Sherman Act, plaintiff has still failed to show that it was the victim of discrimination.

Any claim of discrimination has two elements: (1) favorable treatment of one group or class; and (2) denial of such treatment to others. Discounts to some buyers will not amount to price discrimination unless they are denied to others. *See, e.g., Corn Products Refining Co. v. FTC*, 324 U.S. 726, 744, 65 S.Ct. 961, 970, 89 L.Ed. 1320 (1945) (under § 2(e) of Clayton Act, "It is enough if the discrimination be made in favor of one who is a purchaser *and* *denied* to another purchaser or other purchasers of the commodity") (emphasis added); *FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019, 1025–26 (2d Cir. 1976), *cert. denied*, 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977) (price discrimination under Robinson–Patman Act did not exist where firm had adopted dual pricing scheme, but made lower prices available to all purchasers on equal terms); P. Areeda, *Antitrust Analysis: Problems, Text, Cases* ¶ 701(b) at 1055 (1981) (existence of price "discrimination" may depend upon "availability" of lower price or superior terms to all customers).

There is no allegation here that the terms its competitors received were unavailable to plaintiff. In short, plaintiff never establishes that the "special deals" were in fact "special".

First, Whaler did not discriminate against plaintiff by moving the listed boats to Melle's Fiberglass. After these boats were consigned to Melle's, Whaler circulated a bulletin informing dealers of the move and stating that the boats were "available for sale by any dealer." Plaintiff made no effort to sell from this inventory.[3]

Second, at about the time of the first bulk sale to Port Marine, plaintiff was offered a similar deal but turned it down. Further, after finding out about this bulk sale, plaintiff never asked Whaler if it, too, could purchase boats on open account.

---

**2.** The cases plaintiff cites to show that the Sherman Act prohibits price discrimination either involve concerted action among defendants, *e.g. United States v. Paramount Pictures*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), or are beside the point entirely. In particular, plaintiff directs the court's attention to *Black Gold, Ltd. v. Rockwool Industries, Inc.*, 729 F.2d 676, 683–84 (10th Cir.), *on pet. for recons.*, 732 F.2d 779, *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 113 (1984). There, the Tenth Circuit suggested that conduct that would have violated the Robinson–Patman Act, but for the interstate commerce requirement, could still violate the Sherman Act. On petition for reconsideration in light of *Monsanto*, however, the Tenth Circuit clarified its earlier opinion, stating that "the voluminous record contains evidence sufficient to create a jury issue on whether [defendant] used the high demand for blown wool ... as leverage to obtain acquiescence in an illegal tying arrangement, and whether [plaintiff] was terminated as 'part of or pursuant to that agreement.'" 732 F.2d at 780. *Black Gold* thus dealt with price discrimination plus an agreement otherwise illegal under the Sherman Act. No such agreement is alleged in the instant case.

**3.** Plaintiff claims it would not have made sense to sell from this inventory, because Melle's fiberglass was under the control of its competitor, Falmouth. Whaler's uncontested evidence shows, however, that several dealers besides Falmouth sold listed boats that were consigned to Melle's. Plaintiff also asserts that the listed boats at Melle's were "concealed" from it. Again, the evidence is to the contrary. Plaintiff admits to having been informed about the move.

Third, the subsequent bulk sale to Port Marine was made pursuant to a "Fall Discount Program," the terms of which were extended to every dealer.

Finally, there is no evidence that plaintiff ever requested terms similar to those Falmouth Harbor received on its bulk shipment.

After the Magistrate's Report and Recommendation was filed, plaintiff's president submitted a "second supplementary affidavit" to develop the record on this point. The affidavit states that Whaler had consistently told dealers of its policy against preferential treatment; that Whaler never offered plaintiff price discounts not available to the general dealer network; and—somewhat inconsistently—that when offered a deal similar to Port Marine's first bulk shipment, plaintiff turned it down because it did not need the boats.

Even this late submission fails to salvage plaintiff's case. Whaler's policy against "preferential treatment" is of no moment if it did not change that policy on a "preferred" basis. Nowhere in the second supplemental affidavit does plaintiff show that the "special deals" were not, in fact, available to other dealers who asked to buy similar quantities on similar terms. Absent evidence that "special" terms were denied to any dealer, plaintiff's claim of price discrimination must fall.[4]

### IV.

Since Boston Whaler's underlying conduct did not violate the Sherman Act, its termination of plaintiff's dealership was also permissible. *See Tarr v. General Electric Co.*, 441 F.Supp. 40 (W.D.Pa.1977) (where defendant received summary judgment in antitrust action, retaliatory termination of plaintiff did not violate law). The

termination therefore, affords plaintiff no separate grounds for action.

### V.

There being no further basis for federal jurisdiction, this court declines to exercise pendent jurisdiction over plaintiff's state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218. Plaintiff's state-law claims for breach of contract and unfair trade practices may be adequately and fairly resolved in state court.

An order will issue.[5]

### ORDER

For the reasons stated in a memorandum issued this date, the court hereby ORDERS as follows:

1. Defendants' motion to strike the second supplemental affidavit of Robert Nash and the second supplemental affidavit of Daniel Monahan is DENIED.

2. Plaintiff's motion for partial summary judgment is DENIED.

3. Defendants' cross-motion for summary judgment is GRANTED.

4. Plaintiff's state-law claims are DISMISSED.

IT IS SO ORDERED.

---

**4.** Plaintiff asserts only that special terms were "not offered" to other dealers, not that the terms were unavailable to other dealers who requested them.

**5.** In addition to the reasons discussed above, Magistrate Cohen recommended summary judgment for defendants, because plaintiff failed to meet its burden, under the "rule of reason", by showing an anticompetitive effect in a relevant market. Since the other failures in plaintiff's case are dispositive, that issue need not be addressed.