F I L E D
United States Court of Appeals
Tenth Circuit

JUN 24 1997

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SYSTEMCARE, INC.,

       Plaintiff-Counter-
       Defendant-Appellant,

  v.

WANG LABORATORIES
CORPORATION,

       Defendant-Counter-
       Claimant-Appellee,

  v.

MICHAEL WRIGHT,

       Counter-Defendant,

--------------------------------
UNITED STATES OF AMERICA,

       Amicus Curiae.

No. 95-1032

**ON REHEARING EN BANC**

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 89-B-1778)**

Ronald Katz, Coudert Brothers, San Francisco, California (Janet Arnold Hart and Paul S. Schmidtberger with him on the briefs) appearing for the Appellant.

Jerrold J. Ganzfried, Howrey & Simon, Washington, DC (Thomas E. Gilbertsen and Timothy K. Armstrong, Howrey & Simon, Washington, DC, Michael J. Cook, Faegre & Benson, Denver, Colorado, and Florinda J. Iascone, Wang Laboratories, Inc., Billerica, Massachusetts, with him on the brief) appearing for the Appellee.

David Seidman, Attorney, U.S. Department of Justice, Washington, DC (Anne K. Bingaman, Assistant Attorney General, Joel I. Klein, Deputy Assistant Attorney General, and Catherine G. O'Sullivan, Attorney, with him on the brief), appearing for Amicus Curiae.

----

Before SEYMOUR, Chief Judge, HOLLOWAY, PORFILIO, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, KELLY, HENRY, BRISCOE, and MURPHY, Circuit Judges.

----

TACHA, Circuit Judge.

----

On May 29, 1996, a panel of this court held that a tying arrangement between a buyer and a seller does not satisfy the concerted action requirement of section 1 of the Sherman Act, 15 U.S.C. § 1. Systemcare, Inc. v. Wang Labs. Corp., 85 F.3d 465 (10th Cir. 1996). The panel held that to bring a claim under section 1, a plaintiff must establish a conspiracy between a seller and a third party to force a tying arrangement on a buyer. The panel therefore affirmed the entry of summary judgment against plaintiff Systemcare, Inc. ("Systemcare") and in favor of defendant Wang Laboratories, Inc. ("Wang").

- 2 -

On September 6, 1996, we granted Systemcare's request for rehearing en banc to consider "whether a contract between a buyer and seller satisfies the concerted action element of section 1 of the Sherman Act, 15 U.S.C. § 1, or whether satisfaction of that element requires evidence of a contract, combination, or conspiracy involving a third party to force agreement on a buyer." Today we hold that a contract between a buyer and seller satisfies the concerted action element of section 1 of the Sherman Act where the seller coerces a buyer's acquiescence in a tying arrangement. Accordingly, we overrule City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir. 1992), and McKenzie v. Mercy Hospital, 854 F.2d 365 (10th Cir. 1988), to the extent that these cases are inconsistent with today's holding.

## BACKGROUND

When this case commenced in 1989, Wang manufactured "VS" minicomputers and created copyrighted software for use with them. By 1992, Wang became a service-oriented company, offering both hardware and software support services for its computers. Hardware support services involve maintenance and repair of computer equipment. Software support services include software maintenance, upgrades, and technical assistance. Because

Wang's software support services may require copying Wang's proprietary software, Wang alone provides those services to Wang computer customers.

Systemcare, an independent service organization, services computer equipment that it does not manufacture. Systemcare services Wang computer hardware in Colorado and competes with Wang in providing hardware support services.

Beginning in 1985, Wang offered its minicomputer users a package of hardware and software support services called Wang Software Services ("WSS"). For the purposes of this opinion, we expressly assume, but do not decide, that under the WSS contract, a customer must subscribe to Wang's hardware support program in order to obtain Wang's software support services.

In 1989, Systemcare brought this action under section 1 of the Sherman Act, 15 U.S.C. § 1, alleging that Wang illegally tied the sale of its software support services (the tying service) to the purchase of its hardware support services (the tied service) through the WSS contracts. In late 1991, Wang moved for summary judgment. Wang argued that (1) it did not condition the purchase of software support on the purchase of hardware maintenance, and (2) it lacked sufficient market power to appreciably restrain competition in the market for the allegedly tied product.

On February 5, 1992, the district court requested supplemental briefing on the effect of City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir. 1992), on Systemcare's section 1 claim. After considering the supplemental briefing, the district court granted summary judgment in favor of Wang because Systemcare failed to "establish a conspiracy between at least two parties" to impose a tying arrangement on Wang's customers as required by Chanute. Systemcare, Inc. v. Wang Labs., Inc., 787 F. Supp. 179, 181-82 (D. Colo. 1992). Relying on Chanute, a panel of this court affirmed the judgment of the district court. Systemcare, Inc., 85 F.3d at 471. We granted Systemcare's motion for a rehearing en banc to consider whether as a matter of law a contract between a buyer and seller satisfies the concerted action requirement of section 1 of the Sherman Act.

## DISCUSSION

A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 5-6 (1958). "[W]here the buyer is free to take either product by itself there is no tying problem even though

the seller may also offer the two items as a unit at a single price." Northern Pac. Ry Co., 356 U.S. at 6 n.4.

Section 1 of the Sherman Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce." 15 U.S.C. § 1. A plaintiff who alleges a violation of section 1 must establish: (1) concerted action in the form of a contract, combination, or conspiracy, and (2) an unreasonable restraint of trade.

The Supreme Court has long held that some tying arrangements constitute unreasonable restraints of trade, and therefore violate section 1 of the Sherman Act. See International Salt Co. v. United States, 332 U.S. 392, 396 (1947) (tying violates section 1 of the Sherman Act and section 3 of the Clayton Act); Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 608-09 (1953) (tying violates section 1 of the Sherman Act); Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 4-5 (1958) (tying violates section 1 of the Sherman Act). A tying arrangement constitutes an unreasonable restraint of trade if "the seller has 'appreciable economic power' in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 462 (1992) (quoting Fortner Enters., Inc. v. United States Steel Corp., 394 U.S. 495, 503 (1969)). Although a tying arrangement may constitute an unreasonable restraint of trade, the Sherman Act

also requires proof of concerted action. The issue before the court today concerns the concerted action requirement of section 1.

Section 1 of the Sherman Act requires proof of concerted action in the form of a contract, combination, or conspiracy in restraint of trade. 15 U.S.C. § 1. Section 1 does not proscribe purely unilateral activity by a single entity. See United States v. Colgate, 250 U.S. 300, 307 (1919). Wang argues that tying arrangements that consist solely of a single seller imposing a tie on a buyer constitute unilateral activity, which falls outside the scope of section 1. On the other hand, Systemcare asserts that a tying agreement between a buyer and a seller satisfies the contract, combination, or conspiracy requirement of section 1. Consistent with Systemcare's position, the United States as amicus curiae urges us to conclude that the literal language of section 1 includes buyer-seller contracts in restraint of trade. Because the parties rely upon different lines of Tenth Circuit authority to justify their positions, we begin our resolution of this issue by reviewing the relevant Tenth Circuit case law.

## A.     Tenth Circuit Precedent

We first addressed concerted action in the tying context in Black Gold, Ltd. v. Rockwool Industries, Inc., 729 F.2d 676 (10th Cir. 1984) [hereinafter Black Gold I]. In that case, a home insulation installer brought suit against an

insulation manufacturer under section 1.  Id. at 679.  The installer contended that the manufacturer refused to sell it blown wool (the tying product) unless the installer also bought rolls of insulation known as batts (the tied product).  Id.  The district court directed a verdict in favor of the manufacturer because there was no evidence of a contract, combination, or conspiracy in restraint of trade.  Id. at 685.

Two resale price maintenance cases framed our discussion of the concerted action requirement in Black Gold I.  Id. at 685-86 (citing Colgate, 250 U.S. at 307, and United States v. Parke, Davis & Co., 362 U.S. 29, 43 (1960)).  In these cases, the Supreme Court concluded that although a unilateral refusal to deal without more does not satisfy the concerted action requirement, Colgate, 250 U.S. at 307, the requirement is satisfied "if the producer secures adherence to his suggested prices by means which go beyond his mere declination to sell to a customer who will not observe his announced policy."  Parke, Davis & Co., 362 U.S. at 43.  Applying these principles in the tying context, we adopted the following rule:

> [A] plaintiff who contends a seller has unlawfully used a refusal to deal as a means of enforcing an anticompetitive practice (such as tying or price fixing) may establish the requisite combination or conspiracy in either of two ways:  [1] by showing that he himself unwillingly complied with the practice, or [2] by showing that although he refused to acquiesce, other buyers agreed to the arrangement under threat of termination.

- 8 -

Black Gold I, 729 F.2d at 686 (citing Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 142 (1968), overruled in part on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)).

In reversing the directed verdict for the manufacturer, we noted that the installer produced evidence that the manufacturer "communicated its desire to its customers that they purchase both blown wool and batts." Black Gold I, 729 F.2d at 686. We also emphasized that while the manufacturer terminated sales of blown wool to the installer, the manufacturer continued selling blown wool to other installers who purchased batts in addition to blown wool. Id. Although the plaintiffs refused to buy goods under the tying arrangement, we found that the plaintiffs introduced sufficient evidence that other buyers agreed to the arrangement under threat of termination to support the inference of concerted action. Id.

On rehearing prompted by the Supreme Court's decision in Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752 (1984), we affirmed our holding: "[W]e do not construe Monsanto as a retreat from those cases holding that a combination occurs between a seller and buyers 'whose acquiescence in [the seller's] firmly enforced restraints was induced by the communicated danger of termination.'" Black Gold, Ltd. v. Rockwool Indus.,Inc., 732 F.2d 779, 780 (10th Cir. 1984) [Black Gold II] (quoting Perma Life Mufflers, 392 U.S. at 142)

(internal quotations omitted).  Thus, under <u>Black Gold I</u> and <u>Black Gold II</u>, a plaintiff satisfies section 1's concerted action element by showing a tying agreement between a seller and a buyer.

We next addressed the concerted action requirement in the tying context in <u>McKenzie v. Mercy Hospital</u>, 854 F.2d 365 (10th Cir. 1988).  In that case, a hospital revoked a doctor's staff privileges because he violated hospital and medical staff by-laws and engaged in unprofessional, disruptive conduct.  <u>Id.</u> at 366.  The doctor alleged that the hospital illegally tied the market for hospital facilities and services (the tying product) to the market for physician services (the tied product), in violation of section 1 of the Sherman Act.  <u>Id.</u>  The district court granted the hospital's motion for summary judgment because it found that the doctor failed to demonstrate that the hospital undertook concerted action "with any other persons" to unreasonably restrain trade.  <u>Id.</u> at 366-67.

On appeal, we held that the doctor could satisfy the concerted action requirement only by demonstrating that the hospital allied itself with another "individual" to tie a patient's choice of a physician to the patient's choice of medical facilities.  <u>Id.</u> at 367-68.  We noted that the doctor had failed to identify the involvement of any coconspirator.  <u>Id.</u> at 368.  We emphasized that in order to satisfy the concerted action requirement, the doctor must identify an entity with whom the hospital conspired to force the tying arrangement upon consumers:

> Here, we are not concerned with the legal possibility of a single entity imposing a tying arrangement on its customers. The question before the court--and to which we have replied in the negative--is whether such an arrangement is proscribed by Section 1 of the Sherman Act.

Id. at 368. Thus, in McKenzie we suggested that section 1 of the Sherman Act does not prohibit a single entity from imposing a tying arrangement on its customers.

Less than one year after we decided McKenzie, we again evaluated a tying claim and addressed in dicta the issue presently before the court. In Smith Machinery Co., Inc. v. Hesston Corp., 878 F.2d 1290 (10th Cir. 1989), a franchisee alleged that its franchisor tied the franchise rights for a new line of tractors (the tied product) to the franchise rights for other farm machinery (the tying product). Id. at 1292. When the franchisee refused to offer the new line of tractors, the franchisor terminated the franchisee's dealership. Id. at 1291.

The franchisor did not raise the lack of concerted action as a defense before the district court. Id. at 1295. Nevertheless, we noted in dicta that "to establish a violation of section 1 of the Sherman Act, the complaining party must prove an agreement or concerted activity between separate parties to restrain trade--that is, a 'contract, combination, or conspiracy.'" Id. at 1294 (citing McKenzie, 854 F.2d at 367-68.). Further, we indicated that the concerted action requirement had not been met because the franchisee neither contracted with the franchisor to sell the

tractors nor identified other distributors whose acquiescence "was induced by 'the communicated danger of [dealership] termination.'" Id. at 1294 (quoting Perma Life Mufflers, 392 U.S. at 142, and citing Black Gold I, 729 F.2d at 685-86 and Black Gold II, 732 F.2d at 780). Thus, in Smith Machinery we attempted to harmonize McKenzie, Black Gold I, and Black Gold II. We cited McKenzie for the unremarkable proposition that a section 1 claim requires proof of concerted activity by "separate parties," but we continued to recognize the holding in Black Gold I and Black Gold II that an agreement between a buyer and a seller alone could satisfy this requirement.

Most recently, we addressed the concerted action requirement in the tying context in City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir. 1992). There, eight cities in Kansas and Oklahoma alleged that a natural gas company refused to transport natural gas to the cities (the tying service) unless they bought gas produced by the gas company (the tied product). Id. at 649-50. Without reference to Black Gold I or Black Gold II, a two-member majority of the panel stated:

> Before they can establish a § 1 violation, the Cities "must prove an agreement . . . between separate parties to restrain trade." Smith Machinery Co., Inc. v. Hesston Corp., 878 F.2d 1290, 1294 (10th Cir. 1989), cert. denied, 493 U.S. 1073 (1990). The Cities must show the alleged tying arrangement is "concerted activity by individual actors." Card v. National Life Ins. Co., 603 F.2d 828, 834 (10th Cir. 1979). A violation of § 1 requires "'unlawful conduct by two or more parties pursuant to an agreement. . . . Solely unilateral

- 12 -

conduct, regardless of its anticompetitive effects, is not prohibited.'"
McKenzie, 854 F.2d at 367 (quoting Contractor Utility Sales Co. v.
Certainteed Prods. Corp., 638 F.2d 1061, 1074 (7th Cir.1981)). "[A]
business retains the right under section 1 to unilaterally announce the
terms on which it will deal." Reazin v. Blue Cross & Blue Shield of
Kansas, Inc., 899 F.2d 951, 963 (10th Cir.), cert. denied, 497 U.S.
1005 (1990). The Cities assert the requirements contract between
Williams and the Cities entered into after the pipeline had been
closed is a sufficient showing of an illegal agreement.

The Cities' assertion is erroneous. We held in McKenzie that a tying
arrangement imposed by a single entity is not proscribed by § 1 of
the Sherman Act. McKenzie, 854 F.2d at 368. In that case, the
plaintiff asserted "an arrangement which links two separate and
distinct product markets together" is sufficient proof of a tying
arrangement. Id. We disagreed and held the plaintiff must make a
preliminary showing of a conspiracy between two persons. Id. at
367-68. The Cities have only brought evidence that establishes
Williams tied its natural gas to its transportation facilities. The
Cities have not shown Williams acted in concert with any other
entity. The Cities name only one defendant. The other parties to the
allegedly illegal contracts to establish the conspiracy are the Cities
themselves. We conclude the Cities have failed to make the requisite
preliminary showing of a conspiracy to go forth with their tying
claims under § 1 of the Sherman Act and find summary judgment is
appropriate.

Chanute, 955 F.2d at 650-51 (footnotes omitted).[1]

_____

[1] Judge Seymour wrote separately to disagree with the majority's reliance upon
McKenzie in light of "the law of this and other circuits" in general and Black Gold in
particular. Chanute, 955 F.2d at 658-59 (Seymour, J., concurring). She also noted that
McKenzie was factually distinguishable because the doctor in McKenzie did not either
unwillingly comply with the hospital's tying practice or identify others who unwillingly
agreed to the arrangement under threat of termination. Id. at 659 n.1. Judge Seymour
explained that unlike the doctor in McKenzie, the Chanute plaintiffs stated the requisite
combination or conspiracy by alleging that they were "coerced or forced by a seller into
an illegal tying arrangement." Id. at 658-59 (citing Black Gold I, 729 F.2d at 686).

- 13 -

In sum, in Black Gold I and Black Gold II, we held that an agreement between a buyer and seller alone may satisfy the concerted action requirement. In Chanute, we interpreted McKenzie as requiring a plaintiff to prove a contract, combination, or conspiracy involving a third party to satisfy the concerted action requirement. Today we must resolve this conflict. To that task we now turn.

## B. Unilateral v. Concerted Activity

We hold that a contract between a buyer and seller satisfies the concerted action element of section 1 of the Sherman Act where the seller coerces a buyer's acquiescence in a tying arrangement imposed by the seller.[2] The essence of section 1's contract, combination, or conspiracy requirement in the tying context is the agreement, however reluctant, of a buyer to purchase from a seller a tied product or service along with a tying product or service. To hold otherwise would be to read the words "contract" and "combination" out of section 1.

"A § 1 agreement may be found when the conspirators had a unity of purpose or a common design and understanding, or a meeting of the minds in an

---

[2] The mere fact of agreement to the tying restraint, of course, does not establish a violation of § 1 of the Sherman Act. A plaintiff must also satisfy the additional elements of a tying claim in order to establish a violation of section 1 of the Sherman Act. See Eastman Kodak Co., 504 U.S. at 462 (A tying arrangement violates the Sherman Act "if the seller has 'appreciable economic power' in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market.") (citation omitted).

unlawful agreement." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984) (quotation omitted). Although a buyer is unlikely to desire a provision restricting its ability to purchase a product from other suppliers, a buyer might agree to such a term where the other provisions of the contract serve the buyer's interests. Even though a seller and a buyer may not share the same motive for entering into the anticompetitive agreement, the concerted action requirement is satisfied when their minds meet in an unlawful tying agreement. See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 215 (3d Cir. 1992) (holding that a conspiracy in violation of section 1 does not require the sharing of an identical anticompetitive motive, but requires only a shared commitment to a common scheme that has an anticompetitive objective). To say that the buyer, having agreed to the contract, did not agree to an express term because the buyer would have preferred a contract without the term makes little sense. As the Supreme Court noted in Perma Life Mufflers and reaffirmed in Copperweld, a plaintiff "can clearly charge a combination between [the defendant] and himself, as of the day he unwillingly complied with the restrictive . . . agreement[]." Perma Life Mufflers, Inc., 392 U.S. at 142; see Copperweld Corp., 467 U.S. at 766 (citing Perma Life Mufflers, 392 U.S. at 141-42).

From a buyer's perspective, tying most frequently constitutes a reluctant combination and not an eager conspiracy. This fact does not diminish the

- 15 -

adherence of our holding to the core purposes of the concerted action requirement of section 1. The Sherman Act subjects concerted activity to particular scrutiny because of the inherent anticompetitive risk that such activity will eliminate "independent centers of decisionmaking that competition assumes and demands." Copperweld Corp., 467 U.S. at 769. Concerted action by two entities which "previously pursued their own interests separately . . . reduces the diverse directions in which economic power is aimed [and, therefore,] increases the economic power moving in one particular direction." Id. As with other concerted activity, tying agreements between buyer and seller deprive the market of "independent centers of decisionmaking" by forcing a buyer in need of the tying product to purchase the tied product from the same seller. Id. The concerted action requirement exists to prevent exactly such deprivation.

In holding as we do, we reject Wang's argument that in imposing a tying arrangement, a producer merely acts independently to establish a unilateral term of sale. Wang misapprehends the proper distinction between "independent activity by a single entity" in the form of a mere refusal to deal and "concerted effort by more than one entity to . . . restrain trade" in the form of a tying arrangement. Fisher v. City of Berkeley, California, 475 U.S. 260, 266 (1986) (citing Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 763 (1984)).

A producer who exercises "his . . . discretion as to parties with whom he will deal" does not act concertedly when "he . . . announce[s] in advance the circumstances under which he will refuse to sell." Colgate, 250 U.S. at 307. Thus, a producer may lawfully refuse to sell products to customers who fail to sell the products at or above a minimum price. Colgate, 250 U.S. at 303, 307. A producer goes beyond Colgate's "limited dispensation," Times-Picayune Pub. Co., 345 U.S. at 626, and acts concertedly when the producer requires, as a condition of sale, a buyer's agreement to sell the goods that are the subject matter of the contract at or above a minimum price. See, e.g., United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 719-20 (1944) ("The retail license provisions binding dealers to sell at locally prevailing prices and only to the public constitute illegal restraints.").

A unilateral refusal to deal preserves a buyer's individual free choice to sell at any price goods already purchased. Thus, the buyer is free to independently balance the possible inability to obtain a desired product in the future against the competitive disadvantage of sale at or above the manufacturer's suggested price. When a producer requires goods to be resold at a minimum price as a condition of sale, however, a buyer's decision to sell the goods at the producer's suggested price is not a matter of independent competitive judgment. See Parke, Davis & Co., 362 U.S. at 47. Rather, the buyer's pricing decision is constrained by the

- 17 -

terms imposed by the manufacturer as a condition of sale. "The product . . . comes packaged in a competition-free wrapping . . . by virtue of concerted action induced by the manufacturer." Id.

By their very nature, tying arrangements also limit the power of a buyer to pursue its individual self-interest. The buyer can no longer make its purchase decision based upon the relative merits of the tied product, but is coerced into purchasing the tied product from the producer because of the producer's market power in the tying product. As with unlawful resale price maintenance, a tying arrangement packages the tied product in a competition-free wrapping by virtue of the buyer's agreement to the seller's terms. That agreement satisfies the concerted action requirement of section 1.

Finally, we reject Wang's argument that today's holding deals more harshly with non-price conduct than with price fixing. In particular, Wang contends that our holding creates a lower standard of proof of concerted action for plaintiffs alleging an unlawful tying agreement than for plaintiffs alleging unlawful resale price maintenance. Contrary to Wang's argument, the requirements for proof of concerted action in a tying case are consistent with those applied in cases involving other unreasonable restraints of trade.

In Monsanto, the plaintiff sought to establish concerted action by offering proof that the manufacturer terminated the plaintiff's distributorship following

complaints from rival distributors that plaintiff refused to adhere to the manufacturer's suggested prices. Monsanto, 465 U.S. at 757. Although such evidence is probative of the existence of concerted action, id. at 765, the Court required the plaintiff to introduce "evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently" in order to establish concerted retail price fixing. Id. at 764. The Court added this requirement because the Court found it difficult to distinguish between lawful unilateral and unlawful concerted conduct where each has the same economic effect:

> For example, the fact that a manufacturer and its distributors are in constant communication about prices and marketing strategy does not alone show that the distributors are not making independent pricing decisions. A manufacturer and its distributors have legitimate reasons to exchange information about the prices and the reception of their products in the market. . . . Thus, the manufacturer's strongly felt concern about resale prices does not necessarily mean that it has done more than the Colgate doctrine allows.

Id. at 762-63.

Such evidentiary ambiguity is generally absent in the tying context. The sale of a tied product pursuant to a tying arrangement fully implements the restraint of trade at the time of the sale. Evidence that the buyer acquiesces in a tying arrangement will unequivocally "exclude the possibility that the

- 19 -

manufacturer and [buyers] were acting independently."[3]  Id. at 764.  A seller that imposes a tying arrangement on the purchasers of its product takes affirmative action to avoid competition in sales of the tied product by inducing, indeed forcing, its customers to accept the tying arrangement, thereby accomplishing a restraint of trade contemporaneously with the sale.  Therefore, "we do not construe Monsanto as a retreat from those cases holding that a combination occurs between a seller and buyers 'whose acquiescence in [the seller's] firmly enforced restraints was induced by the communicated danger of termination.'" Black Gold II, 732 F.2d at 780 (quoting Perma Life Mufflers, 392 U.S. at 142) (alteration in original, quotations omitted).

We originally announced the rule we adopt today in Black Gold I and Black Gold II, and its validity clearly survived both Copperweld and Monsanto.  Further, both the Seventh and Ninth Circuits have held expressly that the "coerced sales contract for the tied item" satisfies the "contract, combination, or conspiracy" requirement of section 1.  Datagate, Inc. v. Hewlett-Packard Co., 60

_____

[3] We decline to address the applicability of Monsanto where a plaintiff bases his claim upon an implicit tie.  Compare Service & Training, Inc. v. Data General Corp., 963 F.2d 680, 685 (4th Cir. 1992) ("[A]ppellants must produce evidence of an express tying agreement or evidence that affirmatively 'tends to exclude the possibility' that Data General and its customers 'were acting independently' in the sales and purchase of products.") (quoting Monsanto, 465 U.S. at 764) with Will, 776 F.2d at 670 ("Monsanto helps to separate the legitimate and illegitimate components of a generally cooperative system of distribution and has nothing to say about the meaning of joint action requirement in a tying case.") (citing Black Gold II, 732 F.2d at 780).

F.3d 1421, 1426-27 (9th Cir. 1995) ("A showing that the buyer of the tied product was coerced by the tying arrangement into making the purchase is sufficient to show that the buyer was not merely 'acting independently.'"); Will v. Comprehensive Accounting Corp., 776 F.2d 665 (7th Cir. 1985) (holding that a contract between a franchisor and a franchisee that ties data processing to franchise rights satisfies the concerted action requirement). Today's decision is therefore in harmony with both the law of the Supreme Court and our sister circuits.

## CONCLUSION

To reiterate, we hold that a contract between a buyer and seller satisfies the concerted action element of section 1 of the Sherman Act where the seller coerces a buyer's acquiescence in a tying arrangement imposed by the seller. Therefore, we overrule City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir. 1992), and McKenzie v. Mercy Hospital, 854 F.2d 365 (10th Cir. 1988), to the extent that they are inconsistent with this holding. Because both the district court and the panel based their decisions entirely upon our opinion in Chanute, we VACATE the panel opinion, REVERSE the decision of the district court, and REMAND to the district court for proceedings consistent with this opinion.